[No. 15194.   In Bank. — October 15, 1892.]

F. W. EATON, PETITIONER, *v.* WILLIAM A. BROWN, REGISTRAR OF VOTERS, AND GEORGE H. SANDERSON ET AL., CONSTITUTING THE BOARD OF ELECTION COMMISSIONERS, RESPONDENTS.

96   371
a129  343
e129  349
96   371
137  486
137  487
137  488

CONSTITUTIONAL LAW — AUSTRALIAN BALLOT LAW — PARTY DESIGNATION AT HEAD OF TICKET. — UNIFORM OPERATION. — Sections 1197 and 1205 of the Political Code, being a portion of the amendments of 1891, ingrafting upon the election law the system of voting by means of the reformed or Australian ballot, in so far as they provide for the voting of straight tickets by stamping the ticket opposite the name of certain parties to be printed at the head of the ticket, are unconstitutional in not providing for a uniform operation of the law.

APPLICATION to the Supreme Court for a writ of mandate. The facts are stated in the opinion of the court.

*Henley & Swift,* and *John Currey,* for Petitioner.

*H. L. Gear,* and *Charles J. Heggerty,* for the Registrar.

*Dorn & Dorn,* and *Maxwell & McEnerney,* for the Board of Election Commissioners.

*Thomas V. Cator, Amicus Curiæ,* for Nominees of People's Party.

BEATTY, C. J. — At its last session, the legislature, by a series of amendments to the Political Code, ingrafted upon our election law the system of voting by means of what is popularly known as the reformed or Australian ballot. The main feature of the system is a uniform official ballot, printed and supplied by the proper public officers, containing the names of all candidates to be voted for, upon which the voter designates his choice by stamping a cross. In all cases this may be done by stamping the cross opposite the name of each candidate for whom the elector desires to cast his vote. But by a clause at the end of section 1197 it is provided as follows: " At the head of each ballot shall be printed, in separate lines, the names of all political parties which have filed certificates of nomination of candidates in accordance with sections 1186 and 1187 of this code, thus: 'Regular Republican ticket' (straight). Opposite the name of each party, and on the same line therewith, there shall be a margin similar to that therein required to be left opposite the name of each candidate, in which the voter may place the mark in the manner specified in section 1205 of this code, if he desire to vote for all of the candidates of such party; but a ballot so marked shall not be counted if it be stamped in any other place, except to indicate a vote or votes upon a constitutional amendment or other question."

The petitioner in this case is one of the candidates of a party calling itself the Citizens' Non-Partisan Party, which has nominated a list of candidates for county and local offices in the city and county of San Francisco. He claims that said party has complied with all the conditions entitling it to have printed at the head of the municipal ballots to be used at the approaching election in the city and county of San Francisco the words " Citizens' Non-Partisan Ticket" as a party designation by which it may be voted straight by stamping a cross opposite such heading. He has demanded of the defendants, who are respectively the registrar and the members of the board of election commissioners of the city and

county of San Francisco, that they cause the ballots to be used at said election to be so printed, and they have refused. He therefore seeks, in this original proceeding, to compel the defendants by *mandamus* to comply with his demand.

The argument of counsel has been principally devoted to the question whether or not the party by which the petitioner was nominated has shown that its proceedings bring it within the terms or entitle it to the privilege conferred by the provision above quoted. But the conclusion at which we have arrived renders a decision of these questions entirely unnecessary. We are of the opinion that this provision of the law is unconstitutional and wholly void. It is an attempt to discriminate against classes of voters, and its effect, if allowed to be valid, would be to subject such classes to the alternative of partial disfranchisement, or to the casting of their votes upon more burdensome conditions than are imposed upon others, no better entitled under the fundamental law to the free and untrammeled exercise of the right of suffrage.

The vital importance of the question involved would justify an extended and elaborate discussion of the grounds of our conclusion, but the extreme necessity of a speedy decision, in order to afford a sufficient opportunity to print the ballots, and to inform the electors of the proper mode of expressing their choice, compels us to rest content with the briefest statement of our views.

It is a well-known fact, illustrated by the history of the party which the petitioner represents, that there are parties having merely local existence,— parties, that is to say, which, upon some local issue affecting a single county or a few counties, poll in such county or counties at least three per cent of the votes cast at a given election, or can secure the signatures of five per cent of the electors to a petition, but have no existence elsewhere in the state. There are other parties, perhaps, which at an election will cast three per cent of all the votes cast in the entire state, but in many counties will cast a smaller percent-

age of the votes. In the case first supposed, the party
casting three per cent of the vote in a county at one
election could, at the next election, upon any construc-
tion of the law, nominate by a convention a full county
ticket, could certify it, and secure a ballot heading by
party designation, but such designation would not apply
to any candidate for a state or district office, such as
presidential electors or members of Congress. The re-
sult of having a party designation at the head of the
ticket would be, therefore, to disfranchise every voter
who made use of it as to all state and district officers, or
if he attempted to supplement his straight ticket by
stamping his choice for individual candidates for such
offices, he would be disfranchised altogether, for, under
the law, his ballot could not be counted. The ticket
heading in such case could do the voters of a party no
possible good, but would simply be a lure by which they
could be, and in many instances would be, entrapped
into a loss of their votes. In the second case supposed,
all the ballots used in the state would have a party head-
ing, but in many of the counties the party would have
no local ticket, and in all such counties the voter stamp-
ing the heading would vote for state offices only, and
would be disfranchised as to all district and county offi-
ces, or if he attempted specially to designate his choice
for such offices, his vote would be wholly lost. Such
being the results inevitably flowing from the operation
of this provision of the law if allowed to be operative, it
can readily be seen that it would be no benefit to any
party to allow it a ticket heading unless it had a full
state and local ticket, for no voter of the party could
express his choice by stamping the party designation
without partial or total disfranchisement. His supposed
advantage would be but a delusion and a snare. Even
in San Francisco, at the approaching election, if, as is
said to be the case, the Non-Partisans have nominated
candidates for the legislature, and if, according to the
official opinion of the attorney-general, the names of
such candidates are to be printed on the general or state

ticket along with the names of candidates for Congress and for presidential electors, it would be just as much the duty of the defendants to put the party designation on the general as on the local ticket, and the necessary result would be, that every supporter of the party who should thus be misled into voting a straight ticket would lose his vote for member of Congress and for presidential electors. I imagine the supporters of the movement would scarcely desire the privilege of a party heading at such a price.

Upon these grounds we hold that this provision destroys the just, and equal, and uniform operation which in an election law, of all others, is demanded, no less by the express terms of our fundamental law than by the genius and spirit of our institutions. It is therefore void and inoperative. There should be no party designations printed at the head of the tickets, because there can be no voting by stamping such designation. Voters can only express their choice by placing a stamp opposite the name of their candidate for each office, or by writing the name of a candidate in the blank space left therefor, or their answer to each question or proposition, or proposed amendment to the constitution, except only in case of presidential electors, who may, under the law, be voted for in groups by a single impression of the stamp. Since this is the only mode by which a voter can express his choice, the printing of a party designation at the head of the ticket could do no good, but only harm by misleading some voters and causing them to lose their votes. The officers charged with the preparation of the official ballots should therefore be careful to omit the printing of such headings, and the voters should be thoroughly instructed to express their choice in the manner herein indicated. It will be understood, of course, that we do not hold the new law unconstitutional except as to the single provision under discussion. In other respects, so far as we are at present advised, it may be fully carried out.

The writ of mandate is denied.

HARRISON, J., PATERSON, J., McFARLAND, J., and SHARPSTEIN, J., concurred.

GAROUTTE, J., concurring. — It is very apparent from the reading of section 1197 of the act under consideration, in connection with the sections to which it refers, that in both spirit and letter it was intended that only parties polling three per cent of the entire vote cast at the last general election should have a heading upon the ticket. Such being the fact, to my mind the law is clearly unconstitutional in this, that it discriminates in favor of certain parties, and is therefore lacking in that uniformity of operation demanded by the constitution of this state.

I concur in the judgment.

DE HAVEN, J. — I concur in the foregoing opinion of Mr. Justice Garoutte.