[S. F. No. 4852. In Bank.—August 8, 1907.]

EDWARD GUSTAVE SCHOSTAG, Petitioner, v. THOMAS V. CATOR et al., as Board of Election Commissioners of the City and County of San Francisco, Respondents.

PRIMARY ELECTIONS—SECTION 2½ OF ARTICLE II OF CONSTITUTION—TESTS FOR ELECTORS.—Section 2½ of article II of the constitution, which empowers the legislature to provide for and regulate primary elections, and to prescribe tests of the rights of.electors to vote at primary elections by direct enactment, or to delegate to the governing bodies of the respective parties the power to prescribe such tests, authorizes it to partly exercise and partly delegate such power.

ID.—SECTIONS 1366A AND 1361A OF POLITICAL CODE NOT CONFLICTING.—Section 1366a of the Political Code, providing that in all places. where the Primary Election Law is in force each elector at the time of registering or of transferring registration, shall declare the name of the political party with which he intends to affiliate at the ensuing primary election or elections, that such name shall then be stated in his affidavit of registration, and that he shall not be allowed to vote on behalf of any other party, or for delegates to the convention of any other party, by virtue of that registration, unless before the close of registration he announces and has recorded a change of his party allegiance, and if he refuses to so give the name of his party, that fact is to be stated in the record, and he shall not be permitted to vote at all at the ensuing primary, unless before the close of registration he declares his party allegiance by affidavit; and section 1361a of the same code, empowering the several political parties to prescribe additional tests, if they desire to

do so, for those who offer to vote for delegates to their respective conventions, are not in conflict, and neither is unconstitutional by reason of the enactment of the other.

ID.—SECTION 1366A OF POLITICAL CODE IS CONSTITUTIONAL.—Section 1366a of the Political Code is not unconstitutional for imposing an additional qualification to those prescribed for electors by section 1 of article II. of the constitution; nor is it unreasonable because with the close of registration the elector loses his right to change his party allegiance in consequence of a change in his political convictions, and is precluded from taking part in the election of delegates to the convention of the party with which on the day of the election his more matured opinions would impel him to cast in his lot; nor because a political party entitled to participate in the primary election might determine not to hold a convention or nominate candidates, and by so doing might deprive a member of that party of the right to vote at the ensuing primary.

ID.—CONSTRUCTION OF CONSTITUTIONAL PROVISIONS.—Section 2½ of article II of the constitution must be construed in the light of the evils it was designed to remedy and the course of legislation and judicial decisions prior to its adoption, and the power by it conferred upon the legislature to prescribe tests of the right to vote at primary elections should not be narrowed by construction.

ID.—UNIFORMITY OF OPERATION OF SECTION—SAVING CLAUSE IN FAVOR OF REGISTERED ELECTORS.—The fact that section 1366a of the Political Code contains a saving clause in favor of all electors who were registered before its enactment, permitting them to vote at the ensuing primary election notwithstanding their affidavits of registration contain no declaration of affiliation with any political party, does not render the section unconstitutional for lack of uniformity in its operation, in that it creates classes and imposes more onerous conditions upon one class than another.

APPLICATION for a Writ of Mandate to the Board of Election Commissioners of the City and County of San Francisco.

The facts are stated in the opinion of the court.

Samuel M. Shortridge, for Petitioner.

Thomas V. Cator, for Respondents.

BEATTY, C. J.—This is a petition for a writ of mandate to compel the defendants to issue instructions to the officers appointed to conduct the approaching primary election in the precinct where petitioner is registered to permit him to vote the ballot of any political party lawfully participating therein,

notwithstanding his refusal to comply with the requirements of a new section of the Political Code, known as section 1366a, which provides, among other things, that in all places where the Primary Election Law is in force each elector at the time of registering, or of transferring registration, shall declare the name of the political party with which he intends to affiliate at the ensuing primary election or elections, that such name shall then be stated in his affidavit of registration, and that he shall not be allowed to vote on behalf of any other party, or for delegates to the convention of any other party, by virtue of that registration, unless before the close of registration he announces and has recorded a change of his party allegiance. If he refuses at the time of registering to give the name of his party, that fact is to be stated in the record, and in such case he is not permitted to vote at all at the ensuing primary, unless before the close of registration he declares his party allegiance by affidavit, stating the name of the party with which he is affiliated.

The petitioner contends that this section is unconstitutional, and the defendants are in doubt as to its validity, not only for the reasons urged by the petitioner, but for the additional reason that on the same day (March 19, 1907) that the act adding section 1366a to the Political Code was approved another act was approved adding a new section, to be known as section 1361a, which, it is suggested by counsel for defendant, brings both enactments in conflict with section 2½ of article II of the constitution, or, if either enactment can be held to be prior to the other, at least invalidates that act. The point of this objection is that section 2½ of article II, which empowers the legislature to provide for and regulate primary elections, while it authorizes the legislature to prescribe tests of the right of electors to vote at primary elections by direct enactment, or to delegate to the governing bodies of the respective parties the power to prescribe such tests, does not permit the legislature to partly exercise and partly delegate such power, but, on the contrary, by clear implication forbids any division of this function. We think this objection is over-refined. The legislature, by section 1366a (Stats. 1907, p. 677), has prescribed a test or condition to be complied with by all electors of every party who desire to participate in the primary elections, and by section 1361a (Stats. 1907,

p. 641) has empowered the several political parties to pre-
scribe additional tests, if they desire to do so, for those who
offer to vote for delegates to their respective conventions.
There is no conflict between the two acts, and nothing in
the constitution which forbids even by implication provisions
so reasonable and so just. The legislature having the right to
reserve the exercise of the power of prescribing tests to itself
exclusively, or to delegate the power to the several parties,
is invested with plenary control of the whole subject, and
if it deems some general test, applicable to all parties, neces-
sary as a matter of wise state policy, it does not by prescribing
such a test preclude the delegation of a right to prescribe
more specific tests for the electors claiming to be members
of a particular party. The state has a general interest in
guarding the purity of primary elections, especially since
party conventions have become an essential feature of our
system of choosing public officers, and every party has a
special interest in reserving to its own members the control
of its own affairs.

It would be a deplorable construction of the constitution
which would forbid the enactment of general laws in further-
ance of the general interest of the state, except upon condition
of denying to the governing bodies of the respective parties
the right to exclude from participation in their primaries
electors who, according to their own standards of party
fealty, are not entitled to act with them. This is a right
which parties have always exercised heretofore without ques-
tion, and is essential to their preservation. (*Britton* v. *Board
of Commissioners*, 129 Cal. 337, [61 Pac. 1115].) Our con-
clusion is that since sections 1361a and 1366a are entirely
harmonious in themselves, neither is unconstitutional by reason
of the enactment of the other.

The question which remains to be considered is whether
section 1366a is unconstitutional for any of the reasons
assigned by the petitioner.

It is claimed in the first place that under the guise of
a test of the right of an elector to participate in a primary
election it in fact imposes an additional qualification to
those prescribed for electors by section 1 of article II of the
constitution. We do not think so. What we call "the primary
election" is really a number of primary elections equal to

the number of parties participating, but conducted at the same time and at the same polling-places by one set of public officers, acting in behalf of all the parties desiring to elect delegates to their respective conventions. Therefore, when an elector desires to register in a manner which will entitle him to vote at the primary election, he must be understood as desiring to act with some party, and not with any other party. The registrar is for this purpose the agent of the several parties, and is making up a list of voters for each one of them. It is therefore just as reasonable to require the elector to range himself with some particular party for the purpose of the primary election, as it is to require registration of all electors who desire to vote at the general election. By one registration is secured the right to vote at an election open to all registered electors; by the other is secured the right to vote at an election open to those only who belong to a particular party. In either case registration is merely a condition, and an entirely reasonable condition, prerequisite to the casting of a vote by a qualified elector.

These views, if correct, dispose of several other objections urged by petitioner, and relieve us of the necessity of taking them up *seriatim.* We shall, however, notice some of the arguments that have been most strongly urged upon our attention. It is contended that the test prescribed by section 1366a is unreasonable, because with the close of registration the elector loses his right to change his party allegiance in consequence of a change in his political convictions, and is precluded from taking part in the election of delegates to the convention of the party with which on the day of the election his more matured opinions would impel him to cast in his lot. This inconvenience certainly does result from the provisions of the act, but the legislature, which must be presumed to have foreseen it, probably regarded such sudden conversions during the short interval between the close of registration and the date of the primary election as likely to be of such rare occurrence as not to justify the omission of a provision evidently designed to prevent unscrupulous and mercenary electors from holding themselves free down to the day of election to vote with any party, upon any corrupt motive, for the purpose of influencing the nomination of its candidates for public office, while without

any interest in their success, and perhaps with an interest in their defeat. If it shall sometimes happen that a conscientious voter is converted from one political faith to another between the close of registration and the primary election, he may console himself for the loss of his vote by the reflection that his loss is trifling in comparison to his share of the advantage to the state of which he is a citizen flowing from a measure which tends to prevent a grave abuse, especially in those centers of population where the Primary Election Law is made obligatory.

Another inconvenience, suggested by the fact that in the city and county of San Francisco one political party entitled to participate in the primary election has determined not to hold a convention or nominate candidates, is that the members of that party in this instance, and the members of all parties in similar cases hereafter, will be deprived of the right to vote at the ensuing primary. This inconvenience does not seem to afford valid ground of complaint, since it amounts only to this, that the members of a party which holds no primary election are merely prevented from interfering in the management of a party to which they do not profess to belong.

As to the meaning of section 2½ of article II of the constitution, we agree that it must be construed in the light of the evils to be remedied and the course of legislation and judicial decision prior to its adoption. The evils to be remedied were the corrupt practices by which, in the absence of proper public control, primary elections were made to defeat the will of the *bona fide* members of political parties, and the course of legislation has been to enact one primary election law after another, which have as often been found unconstitutional by reason of various restrictions upon the legislative power contained in our fundamental law. The object of the people in adopting the amendment contained in section 2½ of article II was to remove these restrictions, and to give the legislature a practically free hand in dealing with the evils which their previous legislation had vainly attempted to cure. In view of these considerations we do not feel justified in narrowing by construction the power conferred upon the legislature by that section to prescribe tests of the right to vote at primary elections.

The last and most serious objection to the validity of the law is that it is not uniform in its operation; that it creates classes and imposes more onerous conditions upon one class than another. The point of this objection is that the act cor-tains a saving clause in favor of all electors who were registered before its enactment, permitting them to vote at this primary election notwithstanding their affidavits of registration contain no declaration of affiliation with any particular party. We do not regard this feature of the law as fatal to its validity. As a permanent law of the state it creates no classes and will be entirely uniform in its operations upon all electors. It is no ground for holding such a law unconstitutional that it saves the rights of some electors who by complying with the law as it existed at the date of their registration secured the privilege of voting at all primary elections to be held during the time such registration holds good. We are not aware of any case in which a saving clause protecting vested rights has ever been held to invalidate a law general and uniform in other respects, and we think it not unreasonable to treat the rights secured by registration as meriting the same consideration in this connection as rights more strictly entitled to be ranked as vested rights.

Writ denied.

Shaw, J., Henshaw, J., Sloss, J., and Lorigan, J., concurred.