[S. F. Nos. 4747-4205.   In Bank.—December 2, 1907.]

## A. B. KATZ, Appellant, v. GEORGE FITZGERALD, et al., Respondents; M. LESSER, Appellant, v. GEORGE W. DORNIN, Respondent.

PRIMARY ELECTION LAW IS CONSTITUTIONAL.—The primary election law is not unconstitutional either in not preserving secrecy in voting or in arbitrarily classifying voters and discriminating between the classes so made, or in impairing the right of citizens to assemble together and instruct their representatives, or in investing state officers with judicial functions. In none of these respects does that law violate the spirit or intent of section 2½ of article II of the constitution.

ID.—SECRECY OF BALLOT.—While primary elections are now conducted under the law, and are to that extent a part of the elective system of the state, it is the secrecy of the ballot which the law protects, and not secrecy as to the political party with which the voter desires to act.

ID.—PRESERVATION OF POLITICAL PARTIES.—The primary election law does not destroy the right of self-preservation of political parties, for, in addition to the tests which the legislature has prescribed, it remains with the managing bodies of the political parties to require additional tests of qualification before a citizen may be allowed to vote the party ticket.

ID.—POLITICAL PARTIES REGARDED AS PUBLIC BODIES.—By virtue of section 2½ of article II of the constitution, the state has declared that political parties shall be, as to their mode of holding conventions and nominating candidates for public office, regarded as public bodies whose methods are to be controlled by the state.

ID.—JUDICIAL POWERS OF STATE OFFICERS.—Sections 1188 and 1190 of the Political Code do not vest judicial powers in the secretary of state, clerks, and other officers, in that they are empowered to strike from the list of names of candidates nominated by petition the names of those who have voted at any primary election.

ID.—CLASSIFICATION OF VOTERS.—There is no arbitrary classification of voters by reason of the provision prohibiting one who has exercised the right to vote at a primary election from signing a petition for another candidate.

ID.—DISCRIMINATION BETWEEN PARTIES.—There is no discrimination between large and small political parties because of the provisions of section 1361 of the Political Code, extending the operation of the primary law only to such political parties as have polled three per cent of the total vote.

CLII Cal.—28

APPEALS from judgments of the Superior Court of Alameda County. John Ellsworth, Judge.

The facts are stated in the opinion of the court.

Lewis & Royce, for Appellant.

J. E. McElroy, for Respondent.

HENSHAW, J.—These cases both represent attacks upon the constitutionality of the primary election law and may be considered and disposed of together.

The propositions advanced against the law are: Secrecy in voting is not preserved; the law arbitrarily classifies voters and discriminates between the classes so made; it destroys the right of self-preservation of political parties, and impairs the right of citizens to assemble together and to instruct their representatives; and invests state officers with judicial functions. These objections, for the most part, were advanced and answered in the case of *Schostag* v. *Cator,* 151 Cal. 600, [91 Pac. 502], and *Rebstock* v. *Superior Court,* 146 Cal. 308, [80 Pac. 65], decided by this court in Bank since the appeals in the present cases were taken and the briefs therein filed. In the Schostag case it is said that the evils sought to be remedied by the adoption of section 2½ of article II of our constitution were the corrupt practices by which, in the absence of proper public control, primary elections were made to defeat instead of to express the will of political parties. It is further pointed out that the state has a general interest in guarding the purity of primary elections since primary elections have become an essential feature of our system of choosing public officers, and at the same time each political party has a special interest in reserving to its own members the control of its own affairs. In none of these respects does it appear that the legislative enactments violate the spirit or intent of section 2½ of article II of the constitution. While primary elections are now conducted under the law, and, are to that extent, a part of the elective system of the state, it is the secrecy of the ballot which the law protects, and not secrecy as to the political party with which the voter desires to act. The primary law does not prevent him from voting secretly.

We cannot perceive where this law exposes any person, advocating doctrines distasteful to any section of the community, to its enmity any more than such a person would be exposed if he cast his ballot at a primary election held under the direction of the party managers without control of the law. Nor do we perceive that the right of self-preservation of a political party is destroyed. For, in addition to the tests which the legislature has prescribed, it remains with the managing bodies of the political parties to require additional tests of qualification before a citizen may be allowed to vote the party ticket.

To the objection that it makes a public body of that which is, in its essence, a private association of citizens to accomplish a public purpose, it is sufficient to say that the conception that a political party is merely a private association of citizens, a conception which in the past found wide acceptance, has, under the development of modern political parties, been very generally abandoned, and, where not abandoned, the conception itself has been destroyed, as in this state by force of the constitution and the statutory laws enacted under it. By virtue of the constitutional provision the state has seen fit to declare that political parties shall be as to their mode of holding conventions and nominating candidates for public office, regarded as public bodies whose methods are to be controlled by the state.

Against the constitutionality of sections 1188 and 1190 of the Political Code, it is urged that judicial powers are vested in the secretary of state, clerks, and other officers, in that they are empowered to strike from the list of names of candidates nominated by petition the names of those who have voted at any primary election. We perceive no force in this objection. Ordinarily, the identity of the person will be established by the identity of name, and even if other facts are required for the establishment of such identity, it will scarcely be said that a judicial function is exercised in the determination that the John Smith who voted at a primary election is the same John Smith whose name is appended to a petition.

As little force attaches to the objection that there is an arbitrary classification of voters by the provision prohibiting one who has exercised the right to vote at a primary election from signing a petition for another candidate. If it be said

that hardship to the individual voter may result in preventing him from petitioning for the nomination of candidates of his choice, if his party should fail to nominate those whom he desires, his personal grief should be more than assuaged by the reflection that he is not compelled to vote at a primary election, and that if the rule were otherwise it would open the door to endless frauds, and be destructive to all party organization. It would not alone enable vicious electors to vote at the primary of one or another political party, but would permit them, after doing so, to join in the petition for the nomination of any number of men for any number of offices. The provision is one frequently found in the election laws of the states, and when found has always been upheld. (10 Am. & Eng. Ency. of Law, 635; *Phillips* v. *Curtis,* 4 Idaho, 193, 38 Pac. 405; *Southall* v. *Griffiths,* 100 Ky. 91, [37 S. W. 577].)

As to the objection that there is a discrimination between large and small political parties because of the provisions of section 1361 extending the operation of the primary law only to such political parties as have polled three per cent of the total vote, it must be said that the constitutional amendment in question was framed and adopted after the decisions of this court in *Marsh* v. *Supervisors,* 111 Cal. 371, [43 Pac. 975]; *Spier* v. *Baker,* 120 Cal. 370, [52 Pac. 659]; and *Brittain* v. *Board of Commissioners,* 129 Cal. 341, [61 Pac. 1115], and it was adopted to meet and avoid the very objections to the primary law which this court found were interposed by the constitution in its then existing form. Under the constitutional amendment adopted it must suffice to say that there is no constitutional recognition of any body of men calling themselves a party until three per cent of the vote has been cast by such body. Three per cent is an exceedingly small percentage. All bodies of men casting less than this percentage are treated alike. Some classification is made necessary, else any two, three, or four men might call themselves a party and impose the burden of placing the names of their candidates upon the ballot provided by the state law—a condition which could easily be made intolerable to the state as well as to the voter. Classification becoming necessary, the one here adopted is rational and does not impose any burden upon one of a class that is not imposed upon all, nor, upon the other hand, does it confer any special privilege upon parties which have cast

more than three per cent of the vote, which is not conferred upon all such parties. (*Ladd* v. *Holmes,* 40 Or. 167, [91 Am. St. Rep. 457, 66 Pac. 714].)

For the foregoing reasons the judgments appealed from are affirmed.

Lorigan, J., Angellotti, J., Shaw, J., McFarland, J., and Beatty, C. J., concurred.