[S. F. No. 17721.  In Bank.  Mar. 23, 1948.]

INDEPENDENT PROGRESSIVE PARTY, Petitioner, v. COUNTY CLERKS et al., Respondents.

Gladstein, Andersen, Resner & Sawyer and Norman Leonard for Petitioner.

Fred N. Howser, Attorney General, T. A. Westphal, Jr., and Clarence A. Linn, Deputy Attorneys General, for Respondents.

CARTER, J.—The Independent Progressive Party brings this proceeding involving action or nonaction on the part of the clerks of all of the above-named respondent counties under section 2900 of the Elections Code. That section reads: "Whenever it is made to appear by affidavit to the Supreme Court, district courts of appeal, or superior court of the proper county that an error or omission has occurred or is about to occur in the placing of any name on, or in the printing of, an official primary election ballot, or that any wrongful act has been or is about to be done by any person charged with any duty concerning the primary election, or that any neglect of duty has occurred or is about to occur, such court shall order the officer or person charged with such error, wrong or neglect forthwith to correct the error, desist from the wrongful act or perform the duty, or show cause why he should not do so. Any person who fails to obey the order of such court shall be cited to show cause why he is not in contempt

of court.'' This is a proper case for proceeding under that section. (See, *Communist Party* v. *Peek,* 20 Cal.2d 536 [127 P.2d 889].)

■ It appears from the affidavit filed pursuant to section 2900 that on March 16, 1948, the above named party qualified to participate in the primary election of June 1, 1948, pursuant to section 2540(c) of the Elections Code; that the clerks of the above-named counties have been notified of such qualification under sections 2573 and 2574 of the Elections Code and that there shall be elected at such election members of county central committees for that party under section 2831 of the code; that because of the uncertainty in ascertaining the number of members to be chosen for each county central committee and the numbers for the respective areas in such county, the county clerks will deprive the party of the right to elect members of county central committees in said counties at said primary election.

The difficulty arises from the provisions of the Elections Code dealing with the selection of members of county central committees in counties with less than five assembly districts which apparently includes all 58 counties in the state except three. The statute states: ''In all counties containing less than five Assembly districts the county central committee shall be elected by supervisor districts, and the number to be elected from any supervisor district shall be determined as follows: There shall be taken the number of votes cast in the supervisor district *at the last gubernatorial election for that party's candidate for Governor,* or, if the party had no candidate for Governor, *for the candidate of the party voted on throughout the State* who received the greatest number of votes and who was the candidate of that party alone. This number shall be divided by one-twentieth of the number of votes cast in that county for Governor, or, where the party had no candidate for Governor, for the candidate mentioned above. The integer next larger than the quotient obtained by such division shall constitute the number of members of the county central committee to be elected by that party in that supervisor district.

''The county central committees in counties containing less than five Assembly districts shall be composed of not less than 21 members. If the procedure outlined in the preceding paragraph would result in less than 21 members being elected for any county central committee, the number of votes cast for that party's candidate in each supervisor district shall be

divided by an amount sufficiently smaller than one-twentieth of the votes cast for Governor in that county as to give a membership in the county central committee equal to or the nearest amount which is greater than 21 members." [Emphasis added.] (Elec. Code, § 2837.) There is no other provision in the Elections Code expressly dealing with this subject and it would seem that a new party such as is here involved would have no basis under that provision for computing the number of members of county central committees to which it is entitled or their apportionment among supervisor districts in the county. The base figure upon which the computation is made is the votes cast for the party's candidate for Governor or if there was no such candidate, the votes cast for that party's candidate for an office filled by a statewide election, at the last gubernatorial election. Inasmuch as the party has just been created it obviously did not have such candidate of either kind in the last gubernatorial election.

We believe it is clear, however, that the Legislature did not intend to foreclose such new party from having members of county central committees selected at the primary election following its qualification. The inescapable implication flows from the wording of section 2540(c) of the Elections Code establishing a method of officially creating a new party, that such party shall have the right to participate in the primary election following its creation. It provides: "If on or before the *seventy-fifth day before any primary election* there is filed with the Secretary of State a petition signed by voters, equal in number to at least 10 per cent of the entire vote of the State at the last preceding gubernatorial election, declaring that they represent a proposed party, the name of which shall be stated therein, which proposed party those voters desire to have participate in *that* primary election." [Emphasis added.] The italicized portion of the last-quoted section clearly provides that if petitions with the requisite number of signatures are filed 75 days before any primary, the party shall be entitled to participate in *that* primary; that is, the primary 75 days before which the petition must be filed. It has been squarely held that the right of suffrage is fundamental, which includes the right to action through parties. (*Communist Party* v. *Peek, supra.*) As said in the Communist Party case at page 543: "[T]he inability of the Legislature to infringe the citizen's constitutional right of suffrage prior to 1900 meant that, in any situation where the

party system was an integral part of the elective machinery, the Legislature could not deny to a particular political party the right to participate in a given decision. (*Britton* v. *Board of Commrs., supra* [129 Cal. 337 (61 P. 1115, 51 L.R.A. 115)]; *Eaton* v. *Brown*, 96 Cal. 371, 373 [31 P. 250, 31 Am. St.Rep. 225, 17 L.R.A. 697].) In any election where the party system furnishes the means by which the citizen's right of suffrage is made effective, denial of his party's right to participate in the election accomplishes, in the words of the court in the Britton case, 'the disfranchisement of voters, or . . . [compels] . . . them, if they vote at all, to vote for representatives of political parties other than that to which they belong. The deprivation of the right of selection is a deprivation of the right of franchise.' (*Britton* v. *Board of Commrs., supra*, p. 344; cf. *People* v. *Election Commrs.*, 221 Ill. 9, 18 [77 N.E. 321, 5 Am.Cas. 562]; *State* v. *Phelps*, 144 Wis. 1, 5, 33 [128 N.W. 1041, 35 L.R.A. N.S. 353]; see Starr, *Legal Status of American Political Parties*, (1940) 34 Am. Pol. Science Rev. 439, 444.)'' It is evident from the holding in that case that it would raise grave questions as to the constitutionality of the provisions with respect to county central committees if they are interpreted to preclude the election of such committees by newly and legally formed parties. The integrity of the party function must be maintained, or as expressed in the Communist Party case at page 545: ''The obvious purpose of a primary law is to preserve the integrity of parties. The necessity for maintaining the integrity of such parties is recognized in the constitutional provision with reference to primary elections . . . it is the duty of the legislature when legislating upon the subject of primaries to so legislate as to maintain the integrity of parties, and the integrity of any political party . . .' Throughout the court's opinion in the Uhl case [*Socialist Party* v. *Uhl*, 155 Cal. 776 (103 P. 181)] it is emphasized that the power of the Legislature to restrict the right of suffrage is limited to prescribing tests and conditions for participation in primary elections which are reasonable and not arbitrary.'' County central committees are integral parts of the party machinery and the function of that party. It is said: ''The county central committee shall have charge of the party campaign under general direction of the State central committee or of the executive committee selected by the State central committee'' (Elec. Code, § 2831), and ''County central committees shall perform such other duties and services for their respective

political parties as seem to be for the benefit of each party'' (Elec. Code, § 2832). Other specific functions of such committees appear throughout the Elections Code all pointing to an orderly, democratic and comprehensive system for the functioning of parties and hence the exercise of suffrage through such means. As a further indication of the established intent and policy that the new party should be entitled to participate in the primary election is this court's comment when holding section 2540.5 of the Elections Code invalid. That section reads: ''Notwithstanding the provisions of Section 2540, no party shall be qualified to participate in any primary election unless it appears to the Secretary of State, as a result of examining and totaling the statements of registration of voters and their political affiliations transmitted to him by the county clerks 25 days prior to the last preceding primary election, that not less than 2,500 voters declared their intention of affiliating with that party.'' This court said: ''It should be noted that, although Elections Code, secs. 2570 and 2571, require that data on the number of registered voters in each party be transmitted to the secretary of state eighty days prior to each direct primary election and also twenty-five days prior thereto, the requirements for participation in section 2540.5 are measured by the information conveyed *twenty-five days before the last preceding primary election,* which ordinarily constitutes a period of two years. Since the provisions of section 2540.5 are made absolute, it is clear that no party, however substantial it might be, could participate in a primary election in this state unless it had 2,500 registered voters at a date two years prior to the time when it seeks to assert its right. In the case of a newly organized party the test imposes an absolute bar to participation in a primary election held after its organization because the right to participate is measured by events which transpired before it was in existence. Such a test cannot possibly avoid impairing constitutional rights of suffrage by barring from the ballot political parties which represent substantial numbers of citizens. Moreover, as already pointed out, the test applied must be reasonable. To adopt a test predicated upon the number of registered voters affiliated with a particular party two years in the past when information exists as to the present registration and where there is no alternative test, is to apply an arbitrary and unreasonable standard which does not tend to accomplish any proper legislative purpose. Sec-

tion 2540.5 of the Elections Code, therefore, must be held to be invalid because it is not a reasonable exercise of the power possessed by the Legislature to establish tests and conditions for participation in primary elections.'' (*Communist Party* v. *Peek, supra,* p. 554.)

It is manifest, therefore, that the Legislature intended that a reasonable method should exist for ascertaining the number of members, both for the counties and the supervisor districts in the counties for county central committees of parties which had not participated in the preceding primary election. It will be remembered from the above-quoted provisions of the Elections Code that the basic figure from which computations are made is the votes cast for governor at the last gubernatorial election. While particular reference is made to the party's candidate for governor, the main factor is votes cast at the election for governor or other state-wide officer. Inasmuch as the party had no candidate we are left with the main factor and that must be applied. Hence the votes cast for all candidates for governor at the last gubernatorial election should be used as the basic figure under section 2837. In other respects the computation should proceed in the manner specified in that section.

Respondents are therefore directed to compute the number of members of the county central committee of the Independent Progressive Party in their respective counties, in the following manner:

The county central committees shall be elected by supervisor districts, and the number to be elected from any supervisor district shall be determined as follows:

There shall be taken the number of votes cast in the supervisor district at the last gubernatorial election for all candidates for governor; this number shall be divided by one-twentieth of the number of votes cast in that county for all candidates for governor. The integer next larger than the quotient obtained by such division shall constitute the number of members of the county central committee to be elected by the Independent Progressive Party in that supervisor district.

The county central committee in the respective counties aforesaid shall be composed of not less than 21 members. If the procedure outlined in the preceding paragraph results in less than 21 members being elected for any county central committee, the number of votes cast in the supervisor district at the last gubernatorial election for all candidates for governor shall be divided by an amount sufficiently smaller than

one-twentieth of the number of votes cast in that county for all candidates for governor as to give a membership in the county central committee equal to, or the nearest amount which is greater than, 21 members.

After having so computed the number of members of the county central committee of the Independent Progressive Party in their respective counties, respondents are directed to publish the said computations as part of the notice provided for in sections 2575 and 2576 of the Elections Code.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.