[L. A. No. 24658. In Bank. Nov. 27, 1957.]

CHRISTIAN NATIONALIST PARTY et al., Appellants, v. FRANK M. JORDAN, as Secretary of State, etc., Respondent.

449

Bertrand L. Comparet for Appellants.

A. L. Wirin and Hugh R. Manes as Amici Curiae on behalf of Appellants.

Edmund G. Brown, Attorney General, and Delbert E. Wong, Deputy Attorney General, for Respondent.

GIBSON, C. J.—The Christian Nationalist Party brought this action against the Secretary of State to secure a declaration as to the validity of section 2540 of the Elections Code, which prescribes the requirements to be met by a political party before it may participate in a primary election. Gerald

L. K. Smith and Charles F. Robertson, members of the party who were its candidates for president and vice president in 1956, are also plaintiffs.

The complaint alleges that defendant refused to print the name of the party or of any of its candidates on the primary election ballot in 1956 because it had not complied with the requirements of the challenged section and that, although desiring to participate in the 1958 primary election, the party will find it impossible to satisfy those requirements. A general demurrer was sustained without leave to amend, and plaintiffs have appealed from the ensuing judgment of dismissal.

Section 2540 of the Elections Code provides:

"A party is qualified to participate in any primary election:

"(a) If at the last preceding gubernatorial election there was polled for any one of its candidates . . . for any office voted on throughout the State, at least 3 percent of the entire vote of the State . . .; or

"(b) If on or before the one hundred thirty-fifth day before any primary election it appears to the Secretary of State as a result of examining and totaling the statement of voters and their political affiliations transmitted to him by the county clerks, that voters, equal in number to at least 1 percent of the entire vote of the State at the last preceding gubernatorial election, have declared their intention to affiliate with that party; or

"(c) If on or before the one hundred thirty-fifth day before any primary election there is filed with the Secretary of State a petition signed by voters, equal in number to at least 10 percent of the entire vote of the State at the last preceding gubernatorial election, declaring that they represent a proposed party, the name of which shall be stated therein, which proposed party those voters desire to have participate in that primary election. . . .

"(d) Except that whenever the registration of any party which qualified in the previous direct primary election falls below one-fifteenth of 1 percent of the total state registration, that party shall not be qualified to participate in the primary election but shall be deemed to have been abandoned by the voters, since the expense of printing ballots and holding a primary election would be an unjustifiable expense and burden to the State for so small a group. . . ."

A total vote of approximately 4,100,000 was cast at the last gubernatorial election in 1954, and a party's participation

in the 1958 primary election would be dependent, respectively, under the alternatives set forth in subdivisions (a), (b) and (c), upon having polled 123,000 votes in 1954, obtaining 41,000 registrants or filing a petition signed by 410,000 voters. The position of plaintiffs is that the requirements of section 2540 are so stringent that minor parties cannot qualify, although representing a substantial number of adherents, and that, therefore, the section imposes an unwarranted limitation on the right of suffrage. It is alleged in the complaint that the Christian Nationalist Party has never participated in a gubernatorial election in California and must resort to either subdivision (b) or subdivision (c), that, because voters are reluctant to become registered members of a party until it is qualified, extensive publicity and advertising costing at least $100,000 is necessary for a new party to obtain the number of registrants required under subdivision (b), that an expenditure of over $430,000 is essential to comply with subdivision (c), and that plaintiffs are financially unable to expend such sums.

Section 2540 of the Elections Code was enacted pursuant to a constitutional amendment which expressly empowers the Legislature to establish tests governing the right of political parties to participate in primary elections. (Cal. Const., art. II, § 2½ [adopted in 1900, amended 1908].)* ▇ In general, the purpose of the amendment was to give the Legislature a free hand in eliminating existing evils by providing for the direct nomination of candidates through an efficient primary election system in which the integrity of parties would be preserved. (See *Communist Party* v. *Peek*, 20 Cal.2d 536, 552-553 [127 P.2d 889]; *Schostag* v. *Cator*, 151 Cal. 600, 605 [91 P. 502].) ▇ The determination of what measures will effectuate the objects of the constitutional provision is peculiarly within the domain of the legislative department, and, the usual presumption in favor of constitutionality being applicable, the courts will not interfere if there is any theory

---

*Section 2½ of article II of the Constitution provides, in part: "The Legislature shall have the power to enact laws relative to the election of delegates to conventions of political parties; and the Legislature shall enact laws providing for the direct nomination of candidates for public office, by electors, political parties, or organizations of electors without conventions, at elections to be known and designated as primary elections; also to determine the tests and conditions upon which electors, political parties, or organizations of electors may participate in any such primary election. It shall also be lawful for the Legislature to prescribe that any such primary election shall be mandatory and obligatory."

upon which the Legislature might reasonably conclude that a statute is essential to the carrying out of those objects. (*Heney* v. *Jordan,* 179 Cal. 24, 27-28 [175 P. 402].) We must, therefore, uphold the provisions of section 2540 of the Elections Code unless they are clearly unreasonable.

 Percentage restrictions on the right to participate in primary elections exist in the large majority of the states (see Note (1948) 57 Yale L.J. 1276), and they have long been recognized as proper in California. In *Katz* v. *Fitzgerald* (1907), 152 Cal. 433 [93 P. 112], the court held that such a restriction was reasonable, stating, at page 436, ''Some classification is made necessary, else any two, three, or four men might call themselves a party and impose the burden of placing the names of their candidates upon the ballot provided by the state law—a condition which could easily be made intolerable to the state as well as to the voter.'' (In accord, *Socialist Party* v. *Uhl* (1909), 155 Cal. 776 [103 P. 181].)

In *Communist Party* v. *Peek,* 20 Cal.2d 536 [127 P.2d 889], we approved section 2540 while contrasting it with a statute which we held invalid. The defective statute provided that, notwithstanding section 2540, a political party could not participate in a primary election unless it had 2,500 registered voters before the preceding primary election. It was pointed out that the test was an absolute one predicated upon the number of registered voters two years in the past, although information existed as to current registration, and that there was no alternative method of qualification. We concluded that a party with a substantial number of new adherents might be excluded and that the reasonableness of any test based upon numerical data depends for its validity upon the theory that the Legislature is seeking to bar ''only insubstantial groups the deprivation of whose rights can be justified by the larger good derived from a more efficient operation of the primary system.'' With respect to section 2540, we said that ''. . . it is clear that any substantial party could establish its right to participate in the primary election under some one of the various numerical tests therein provided.'' (20 Cal.2d at pp. 552-553.)

 The number of citizens which constitutes a substantial group for purposes of an election law is not, of course, an absolute matter but a relative one which is to be measured in the light of the size of the entire voting population. Otherwise, a statute of the type before us would soon prove in-

effective in a state which, like ours, is experiencing rapid growth. The standards for qualification in section 2540, being stated in percentages of the total vote, are designed to respond to fluctuations in the size of the electorate, and they are set forth in the form of alternatives, so that provision is made for established parties, regardless of prior success, as well as for entirely new political groups.

Under subdivision (a), a party which participated in the last gubernatorial election may qualify, notwithstanding the fact that up to 97 percent of the electorate may have rejected its candidates. A party which was even less successful than necessary to meet the lenient three percent requirement of that subdivision or one which did not participate in the election is not barred from entering the forthcoming primary election but may take advantage of subdivision (b), should its program convince persons amounting to only one per cent of the 1954 vote (41,000 electors) to register as members. The ease with which subdivision (b) may be satisfied is demonstrated by the fact that, in 1956, when there were 24,984 voting precincts in the state, a party having an average registration of less than two voters per precinct could qualify. Yet, satisfaction of this moderate registration requirement is not essential to qualification because, alternatively, a party may come within the terms of subdivision (c) by filing a petition signed by voters who are equivalent in number to 10 percent of the earlier vote and who, without being required to become members, are willing to state that they represent the party and desire to have it participate in the 1958 primary election.

It is true, of course, that a presently insubstantial group may be required to make expenditures in seeking qualification, but any numerical test would have the same effect. The statute does not impose any financial requirement but only restrictions based on numerical data, and the circumstance that every group calling itself a party may not be able to obtain funds which it estimates would enable it to win the necessary support among the voters of the state does not show that the restrictions are not reasonably designed to advance a vital public purpose. The right to participate in primary elections is an important one, and it is precisely that fact which justifies the enactment of measures designed to establish a workable primary election system so that the public may exercise the right effectively. To that end, the

exclusion of insubstantial groups is proper, and, in our opinion, section 2540, when taken as a whole, does not exclude any substantial party.*

It is argued that section 2540 applies qualification standards which vary significantly in harshness, thereby discriminating between parties qualifying under subdivision (a) and those which did not participate in the preceding gubernatorial election and must resort to subdivision (b) or subdivision (c). ██ In seeking to formulate fair qualification standards for all parties, the Legislature was confronted with the fact that, although the number of votes received at a prior election could reasonably be treated as reflective of the present strength of a party which participated therein, other criteria were necessary with respect to nonparticipating parties. The registration in support of such parties and their ability to secure signatures on an appropriate petition were selected, and the Legislature was justified in concluding that there was a sufficient difference between these matters and the winning of votes to warrant variations in the applicable percentages. It must again be emphasized that the subdivisions under which nonparticipating parties may qualify are alternatives, and they may not be taken separately in considering whether they are discriminatory. ██ While the percentage in subdivision (c) is substantially larger than that in subdivision (a), the percentage in subdivision (b) is only one-third as great. In view of the weight to be accorded legislative determinations in this field, section 2540 may not be regarded as discriminating among parties of the same size.

The judgment is affirmed.

Shenk, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.

CARTER, J.—I dissent.

This case comes to this court upon the question of the correctness of a judgment entered pursuant to an order sus-

---

*A candidate of a party which is excluded from a primary election may nevertheless be elected to office. He is not only eligible to receive write-in votes at the general election (Elec. Code, § 5710) but may have his name printed on the general election ballot with the designation "Independent," if, subsequent to the primary election, nomination papers are filed on his behalf by voters in the area involved who did not participate in the primary election and who number at least five per cent of the entire vote cast in that area at the preceding general election (Elec. Code, §§ 3040, 3041, 3815).

taining a demurrer without leave to amend, to appellants' complaint challenging the constitutionality of section 2540 of the Elections Code. When reviewing such an order the facts stated in the complaint must be accepted as true for the purposes of appeal. Therefore, for our purposes the question before this court is, assuming the facts to be true, does the complaint state facts sufficient to demonstrate a violation of appellants' constitutional rights? I believe it does.

Without discussing the facts alleged in the complaint, the majority opinion holds that the Legislature is empowered to establish tests governing the rights of political parties to participate in primary elections. With this holding I am in general agreement. However, from this determination the majority of the court further concludes that the percentage requirements set forth in subdivisions (a), (b) and (c) of section 2540 are reasonable, and therefore, constitutional. In view of the facts as stated in the complaint, I am constrained to disagree with such a conclusion.

Appellant, the Christian Nationalist Party, nominated appellants Gerald L. K. Smith and Charles F. Robertson, as its candidates for the office of President and Vice-President of the United States at the 1956 election. The Secretary of State of California, respondent herein, refused to print on the official ballot the names of the Christian Nationalist Party, Gerald L. K. Smith, Charles F. Robertson or any other candidate for office nominated by appellants, on the ground that they had not complied with the provisions of any of the subdivisions of section 2540 of the Elections Code, and therefore, were not eligible to have their names printed upon the ballot.

Appellants now desire to participate in the 1958 elections as a party, but this right will be denied them because of the provisions of section 2540. It is pointed out that in order to appear on the general election ballot as a party, they must first participate in the primary, and to do this the requirements of section 2540 must be satisfied.

The complaint alleges that appellants are a new political party, and that they can only qualify for the primary under subdivisions (b) and (c) of section 2540. To demonstrate the unreasonableness of these provisions it is alleged that ''Until a political party is qualified to have the names of its candidates printed upon the ballot under the designation of said Party's name, it is substantially impossible to induce any substantial number of electors to register as affiliated

with such proposed Party; and such reluctance of electors to register as affiliated with what is not yet qualified as a political party can only be overcome by very extensive— and very expensive—publicity and advertising, in all major newspapers of every large city, and on most of the major radio and television stations; that the cost of such publicity and advertising required to induce electors to register as affiliated with such a proposed political party is in addition to all expenses of the actual political campaign for any primary or general election; that . . . the cost of such publicity and advertising necessary to get the required number of electors to register as affiliated with a proposed new political party would be $100,000.00 or more.'' In connection with the requirements of subdivision (c), it is contended that the time limitation renders this alternative unreasonable in addition to the monetary considerations. It is pointed out that based on the figures of the last election 410,000 valid signatures are needed to meet the ten per cent requirement of subdivision (c), and to accomplish this within the time allotted—130 days —an additional $400,000 is needed.

From these facts it is contended that the restrictions imposed by these subdivisions are unreasonable and impossible to satisfy, and thus violate their constitutional rights.

The right being asserted by appellants is that of suffrage. This is a fundamental right inherent in a free government and guaranteed by the Bill of Rights in the Constitution of the United States and by article II, section 1, of the California Constitution. It has been well established that the direct primary is an integral part of the election process, and the right of the electorate to nominate candidates in the primary has become an essential attribute of the right of suffrage (*United States* v. *Classic,* 313 U.S. 299 [61 S.Ct. 1031, 85 L.Ed. 1368]; *Smith* v. *Allwright,* 321 U.S. 649 [64 S.Ct. 757, 88 L.Ed. 987, 151 A.L.R. 1110]; *Communist Party* v. *Peek,* 20 Cal.2d 536 [127 P.2d 889]).

A necessary corollary of the right of the electorate to nominate candidates of their party in the primary election, is the right of political parties to form and participate in elections by running their candidates for political office. The fundamental nature of this right has been affirmed by this court in *Socialist Party* v. *Uhl,* 155 Cal. 776 [103 P. 181], wherein it was stated: "A political party is an organization of electors believing in certain principles concerning governmental affairs and urging the adoption and execution of

those principles through the election of their respective candidates at the polls. The existence of such parties, the dominant party and the parties in opposition to it, lies at the foundation of our government and it is not expressing it too strongly to say that such parties are essential to its very existence." (*Socialist Party* v. *Uhl, supra,* 155 Cal. 776, 793.)

A recent elaboration of this principle is found in the case of *Independent etc. Party* v. *County Clerks,* 31 Cal.2d 549 [191 P.2d 6]. Defining the nature of a political party's right to participate in the elective processes, it was stated (p. 552) : "In any election where the party system furnishes the means by which the citizen's right of suffrage is made effective, *denial of his party's right to participate in the election accomplishes,* in the words of the court in the Britton case, '*the disfranchisement of voters, or . . . [compels] . . . them, if they vote at all, to vote for representatives of political parties other than that to which they belong. The deprivation of the right of selection is a deprivation of the right of franchise.'* " (Emphasis added.) From the language of these cases there can be no doubt that the right of a political party to participate in primary elections is one guaranteed by both the federal and California Constitutions.

It does not follow, however, that this right of political parties to participate in elections, is, in every case, entitled to protection, since the right to vote is not absolute, the state having an interest in keeping elections free from violence and corruption and in providing fair and efficient election procedures. It is only where the state fails to justify the diminishment of such right by a demonstration that the state has an interest paramount to the right, that the state's restriction will be stricken as violating the Constitution. But when we balance the interest of the state against the constitutional right of political parties to participate in elections, as we must here, we must remain mindful that the latter occupy a preferred position. (See *Jones* v. *Opelika,* 316 U.S. 584 [62 S.Ct. 1231, 86 L.Ed. 1691, 141 A.L.R. 514] ; *Murdock* v. *Pennsylvania,* 319 U.S. 105 [63 S.Ct. 870, 891, 87 L.Ed. 1292, 146 A.L.R. 81].) The right to exercise freedom of choice in primary and general elections lies at the foundation of free government by free men and we must in all cases "weigh the circumstances and . . . appraise the reasons . . . in support of the regulation . . . of the right." (*Schneider* v. *State,* 308 U.S. 147, 161 [60 S.Ct. 146, 84 L.Ed. 155] ; see *Marsh*

v. *Alabama,* 326 U.S. 501, 509 [66 S.Ct. 276, 90 L.Ed. 265] ; *Communist Party* v. *Peek, supra,* 20 Cal.2d 536, 544, 545.)

Considering the facts alleged in the complaint as true, it is my opinion that the percentage requirements set forth in section 2540 go beyond the area in which the state may legitimately act in regulating political parties in order to maintain an efficient election system, for the reason that too great a financial burden is placed on new political parties attempting to establish themselves. The constitutional attack on the reasonableness of section 2540, is based primarily on financial factors. The amounts alleged to be necessary to secure a party's name on the ballot are of sufficient size to bear out the contention of unreasonableness. Certainly there can be little doubt that if a new political party, in order to get on the primary ballot, must spend $100,000, in addition to normal campaign costs, very few, if any, new political parties will be developed in California. This results, therefore, in the exclusion of new political parties in California, not because of a paramount state interest, but because the new political parties lack the funds to enable them to qualify. In other words the effect of the statute does not necessarily exclude unsubstantial parties, but impecunious parties. Whatever may be the right of the Legislature to exclude unsubstantial parties from elections in the name of efficiency, it does not extend to their exclusion on the ground of lack of money (*United States* v. *Classic, supra,* 313 U.S. 299; *Smith* v. *Allwright, supra,* 321 U.S. 649; *Independent etc. Party* v. *County Clerks, supra,* 31 Cal.2d 549.) It appears that this is the effect of section 2540.

For the foregoing reasons I would reverse the judgment.

Appellants' petition for a rehearing was denied December 23, 1957. Carter, J., was of the opinion that the petition should be granted.