491 P.2d 520

**PEOPLE'S CONSTITUTIONAL PARTY et al., Plaintiffs-Appellees,**

v.

**Ernestine D. EVANS, Defendant-Appellant.**

**No. 9120.**

Supreme Court of New Mexico.

Dec. 6, 1971.

304

James A. Maloney, Atty. Gen., Justin Reid, Frank N. Chavez, Ronald J. Van Amberg, Asst. Attys. Gen., Santa Fe, for appellant.

Michael B. Browde, Peter C. Mallery, Albuquerque, for appellees.

## OPINION

OMAN, Justice.

People's Constitutional Party (P.C.P.) is a qualified political party of the State of New Mexico, and as of May 1970 there were 169 qualified voters registered as members of this party. Plaintiffs, William Higgs and Alfredo Martinez, were registered members of the P.C.P. and qualified voters of the State of New Mexico. Higgs was a declared candidate for the office of United States Senator and Martinez a declared candidate for the office of State Treasurer. The P.C.P., Higgs and Martinez did not participate in the 1970

1. This is the manner in which the P.C.P. selects its nominees.

2. Prior to April 8, 1971 and at the time of the entry of the judgment the figure was

primary nominating election, but sought placement on the 1970 general election ballot.

Plaintiff, Sophia Fajardo, was a registered Democrat and a qualified voter of the State of New Mexico who claimed a desire to have a broader choice of candidates in the 1970 general election than would be provided by the Democratic and Republican candidates.

Plaintiff sought and recovered a judgment from the trial court declaring §§ 3-8-2(B), (C) and 3-8-3(C), N.M.S.A.1953 (Repl. Vol. 1, 1970) unconstitutional and enjoining defendant as Secretary of State from enforcing the provisions of these sections of our statutes. Defendant appealed, but the case was not docketed in this court until long after the 1970 general election had become history. Consequently, our only concern now is with that portion of the judgment declaring these sections of our statutes unconstitutional. We reverse.

The questions presented are whether the requirements of §§ 3-8-2(B), (C) and 3-8-3(C), supra, contravene plaintiffs' rights as guaranteed by Art. II, § 8, and Art. VII, § 5 of the Constitution of New Mexico, and by the First Amendment and Fourteenth Amendment to the United States Constitution.

Section 3-8-2(B), supra, provides in pertinent part:

"The names certified to the secretary of state [as nominees of a minority party which selects its nominees by convention][1] * * * shall be accompanied by a list of signatures and legal addresses of not less than three per cent [3%][2] of the qualified electors of the state as computed from the total number of votes cast for the office of governor at the last preceding general election at which the governor was elected. Such petition shall be to the effect that the

five per cent [5%], but plaintiffs take the position this change in no way affects the decision of the trial court or plaintiffs' position.

signers thereof endorse the principles of the political party named thereon or that the signers will designate or have designated such party affiliation on their affidavits of registration."

Section 3–8–2(C), supra, contains similar provisions as to nominees for county offices. Section 3–8–3(C), supra, provides that minority parties which make nominations by methods other than a political convention must comply with the above requirements as to accompanying lists of signatures of qualified electors.

Art. II, § 8, and Art. VII, § 5 of the Constitution of New Mexico provide:

*Art. II, § 8*

"All elections shall be free and open, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage."

*Art. VII, § 5*

"All elections shall be by ballot, and the person who receives the highest number of votes for any office, except in the cases of the offices of governor and lieutenant governor, shall be declared elected thereto. The joint candidates receiving the highest number of votes for the offices of governor and lieutenant governor shall be declared elected to those offices."

The New Mexico Constitution also provides in Art. VII, § 1:

"The legislature shall have the power to require the registration of the qualified electors as a requisite for voting, and shall regulate the manner, time and places of voting. The legislature shall enact such laws as will secure the secrecy of the ballot, the purity of elections, and guard against the abuse of elective franchise. * * *"

Plaintiffs concede the right of the Legislature to regulate the organization and conduct of elections and that the questioned statutory provisions do regulate elections. However, they argue that the signature requirements of these statutory provisions constitute onerous burdens which prevent minority parties from placing their nominees on the ballot. Their argument apparently is that minority parties have the right to form and participate in general elections by having their party names and emblems and the names of their nominees placed on the printed ballot or voting machines, without any show of support for a party, for a party's principles or for the nominees thereof. They predicate this claim of right primarily upon the "free and open" election provision of Art. II, § 8 quoted above, and upon their construction of the majority opinion in Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). In fact their entire argument, that the statutory provisions in question contravene both the state and federal constitutions, depends very largely upon their construction of the majority opinion in Williams v. Rhodes, supra, and this majority opinion apparently was the primary force resulting in the trial court's persuasion to hold the statutory provisions unconstitutional.

█ Elections of necessity must be organized and controlled to protect the right of suffrage, secrecy of the ballot, and against confusion, deception, dishonesty and other possible abuses of the elective franchise. The Legislature is charged with the duty of enacting laws to accomplish the purity of elections and protect against abuses. It takes little imagination to conceive of confusions and deceptions which might be worked upon electors if plaintiffs' position were to be accepted. Free and open elections do not require a total lack of restraint on the number of political parties and nominees entitled to placement on the ballot.

█ In any event, the Legislature has determined that the signature list requirements as provided by §§ 3–8–2(B), (C) and 3–8–3(C), supra, are consistent with its authority and duty to secure the purity of elections and guard against abuse of the elective franchise. It is our duty to uphold this legislative determination, unless satisfied beyond all reasonable doubt that the

Legislature went outside its constitutional authority in enacting these statutory requirements. McKinley v. Alamogordo Municipal School Dist. Auth., 81 N.M. 196, 465 P.2d 79 (1969); City of Raton v. Sproule, 78 N.M. 138, 429 P.2d 336 (1967); State v. Pacheco, 81 N.M. 97, 463 P.2d 521 (Ct.App.1969); Wylie Bros. Contracting Co. v. Albuquerque-Bernalillo County Air Quality Control, 80 N.M. 633, 459 P.2d 159 (Ct.App.1969). We are not so satisfied.

Nothing said by the Supreme Court of the United States in Williams v. Rhodes, supra, is inconsistent with our interpretation of the New Mexico constitutional provisions in question and above quoted, and nothing said by that Court persuades us to the interpretation urged upon us by plaintiffs.

■ We next consider whether the signature list requirements under § 3–8–2(B), (C) and 3–8–3(C), supra, violate plaintiffs' United States constitutional rights of freedom of association, as guaranteed by the First Amendment,[3] and of equal protection, as guaranteed by the Fourteenth Amendment. The cases controlling a determination of these issues are Williams v. Rhodes, supra, and the later case of Jenness v. Fortson, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971).

In the Williams case the election laws of Ohio were held unconstitutional because they constituted an entangling web of election laws, the totality of which imposed a burden on voting and associational rights amounting to an invidious discrimination against all but two particular parties—the Democrats and Republicans. See the opinion in the Jenness case, supra, and also 30 Ohio St.L.J. 202 (1969) for analyses of the substance and significance of the Williams decision. In the Jenness case the validity of the Georgia statutes was upheld. See the opinion in that case for a discussion of the differences between the Ohio and Georgia statutes.

The result reached and most of the reasoning of the Court in the Williams case are not applicable here, because we are only concerned with the quantitative and qualitative requirements of the two sections of our statutes shown above, and because the nominating requirements of our statutes do not impose a burden on voting and associational rights which effectively bar all minority parties from the ballot. The quantitative requirement as to names on the nominating petition under the Ohio statutes was qualified electors totaling 15% of the numbers of ballots cast in the last preceding gubernatorial election; under the Georgia statutes it was a number of electors of not less than 5% of the total number of electors eligible to vote in the last election for the filling of the office the candidate is seeking; under our statutes it is 3% of the qualified electors of the state as computed from the total number of votes cast for the office of governor at the last preceding general election at which the governor was elected. Thus, clearly our quantitative requirement is valid.

In neither the Williams nor the Jenness case was there involved a qualitative requirement such as ours. This requirement, as shown above, is that the signers of a nominating petition, in addition to being qualified electors, must in effect state that they " * * * endorse the principles of the political party named thereon * * * " or " * * * will designate or have designated such party affiliation on their affidavits of registration."

One of the principal purposes of a political association or party, as well as of any association, is to promote the advancement of common ideas and beliefs and the airing of grievances. Williams v. Rhodes, 393 U.S. at 38, 89 S.Ct. 5, supra; N.A.A.C.P.

___

3. This First Amendment right is made applicable to the states by the Fourteenth Amendment. Williams v. Rhodes,

supra; New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

v. Alabama, 357 U.S. 449, 460, 78 S.Ct 1163, 2 L.Ed.2d 1488 (1958); Bates v. Little Rock, 361 U.S. 516, 523, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960). The nominees of all major parties are selected at the primary election only by the registered electors of each respective party and only from candidates whose registration records show affiliation with the particular party for one year next preceding the filing date for the primary election. Sections 3-8-1(A), 3-8-5, 3-8-17 and 3-8-24, N.M.S.A. 1953 (Repl.Vol. 1, 1970).

We are unable to understand how the foregoing stated requirements, that signers of a nominating petition must in effect state that they " * * * endorse the principles of a political party named thereon * * *" or " * * * will designate or have designated such party affiliation on their affidavits of registration," can possibly be viewed as violating plaintiffs' rights of association or equal protection. In fact the stated requirement is less restrictive than that imposed on electors and candidates who wish to participate in the nominating process of the major political parties.

The State has a legitimate interest in trying to determine some degree of good faith on the part of electors who sign nominating petitions, and in assuring at least a modicum of support for a political party and its nominees whose names are placed on the general election ballot. The requirements in these respects imposed by our Legislature are consistent with its duty to protect the purity of elections and safeguard against abuse of the elective franchise.

The judgment of the trial court should be reversed.

It is so ordered.

McMANUS, and STEPHENSON, JJ., concur.