575 P.2d 1250

**John KANNARR and Libertarian Party of Arizona, Petitioners,**

v.

**The Honorable Charles L. HARDY, Judge of the Superior Court of Maricopa County, the State of Arizona ex rel. Wesley Bolin, Secretary of State, the County Recorders and Boards of Supervisors of Apache County, Cochise County, Coconino County, Gila County, Graham County, Greenlee County, Maricopa County, Mohave County, Navajo County, Pima County, Pinal County, Santa Cruz County, Yavapai County and Yuma County, Respondents.**

No. 13365.

Supreme Court of Arizona,
En Banc.

Feb. 28, 1978.

Rehearing Denied April 4, 1978.

Sorenson, Esser & Moore by Fred R. Esser, Phoenix, for petitioners.

Charles F. Hyder, Maricopa County Atty. by Q. Dale Hatch, Deputy County Atty., Phoenix, for respondent Maricopa County, et al.

Bruce E. Babbitt, Atty. Gen. by Steven J. Silver, Phoenix, for respondent Wesley Bolin, et al.

Neil Vincent Wake, Phoenix, for amicus curiae Arizona Civil Liberties Union.

HAYS, Justice.

This is a special action brought by the Libertarian Party of Arizona and John

Kannarr, a qualified elector of this state and an elected member of the State Central Committee of the Libertarian Party of Arizona.

The principal issue raised by petitioners in the petition for special action was, what did the legislature intend by the term "total votes cast" in A.R.S. § 16–201 which requires that a political party must receive 5% of the "total votes cast" to remain on the official ballot for state officers.

The facts necessary for a determination of this matter are as follows. Pursuant to A.R.S. § 16–202, the Libertarian Party obtained sufficient signatures to be represented by an official party ballot at the Primary Election of 1976. In that election, the Libertarian Party nominated two candidates for State Representative, two candidates for State Senate, and one candidate for the Corporation Commission.

In December, 1976, the Libertarian Party filed in the Superior Court of Maricopa County, a complaint for declaratory judgment pursuant to A.R.S. § 12–1831 requesting that the court rule that the Libertarian Party is a recognized political party in Arizona and is entitled to receive the benefits of such official status. Motions for summary judgment were filed by all parties. The trial court denied the Libertarian Party's motion for summary judgment and granted that of the defendants. This special action followed. We took jurisdiction because we deem it a matter of statewide importance which should be decided sufficiently in advance of the next election.

Having obtained party representation by way of A.R.S. § 16–202, the statutes require that the new party must receive a certain percentage of the votes cast in the general election in order to retain the status of an official political party:

"A political organization which at the last preceding general election cast for its candidates for state office, or for any county, city or town office, not less than *five per cent of the total votes cast* in the state or in such county, city or town, is entitled to representation as a political party on the official ballot for state offi-

cers, or for officers of such county or local subdivision." A.R.S. § 16–201 (emphasis added).

For the purpose of this statute, state legislators, corporation commissioners and state mine inspector are state officers. A.R.S. § 16–301(C). These were the officers on the ballot in the 1976 General Election.

Statutes requiring a showing of a minimum amount of support for a political party before allowing the party to have or continue official status on the ballot have been upheld:

"There is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot— the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election." *Jenness v. Fortson*, 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed.2d 554, 562 (1971). *See also Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974); *People's Constitutional Party v. Evans*, 83 N.M. 303, 491 P.2d 520 (1971); *Christian Nationalist Party v. Jordan*, 49 Cal.2d 448, 318 P.2d 473, 70 A.L.R.2d 1153 (1957).

We have no trouble with the statutory requirement which requires that before a new party may be represented on the ballot, it obtain signatures of electors equal to 2% of the total vote cast for governor at the last election, A.R.S. § 16–202, or 3% of the vote cast for county attorney at the last election, A.R.S. § 16–203. Neither do we find unreasonable the requirement that having petitioned to get on the ballot a new party must demonstrate in the general election a "significant modicum of support" by receiving 5% of the votes cast.

The ingenuity of the human mind is aptly demonstrated by the variety of interpretations which have been placed upon the words "not less than five per cent of the total votes cast" in the parties' pleadings. We find no ambiguity in those words, however. It has nothing to do with the number

of ballots cast, nor with the total votes cast for candidates of a particular party in a limited number of specific races. According to defendants' exhibit 1, the secretary of state's official canvass of the returns for the November 2, 1976 General Election, a total of three million, eighty-nine thousand, two hundred and five (3,089,205) votes were cast for state officers.

As indicated by A.R.S. § 16–201, the "total votes cast" applies to "candidates for state office" as applied to the issue before us. We therefore did not consider the votes cast for presidential electors, United States Senator or United States Representative in arriving at our total above. Although judges are elected state officers, whether under merit selection or not, *Carter v. Commission on Qualifications of Judicial Appointments*, 14 Cal.2d 179, 93 P.2d 140 (1939), we did not include votes cast for judicial offices because they were not included under party designation and had no party implications. The same reasoning was applied to exclude the votes cast for propositions on the ballot, including the fact that they do not fall within the language of the statute, *i. e.*, "votes cast for its candidates."

The votes cast for the Libertarian Party candidates totaled 42,915. As we previously indicated, they fielded two candidates for the House of Representatives, two candidates for the Senate, and one candidate for the Corporation Commission. In order to comply with the statute, A.R.S. § 16–201, the Libertarian Party needed not less than 154,460 votes cast for its candidates for state office (not less than 5% of 3,089,205). As the canvass indicates, their candidates received 1.4% of the votes cast which is not enough to accord them automatic party status.

Counsel who support the position of the Libertarian Party have implied that failure to accord that party recognition in 1978 based on the 1976 election returns would violate equal protection of the laws and due process of law. In essence, unless we contort unambiguous and plain words, the state's statute is unconstitutional. We do not agree.

*Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968), is cited for the proposition that in reviewing state restrictions on access to the ballot, there must be shown a compelling state interest to justify exclusion from the ballot. The Ohio law which the Supreme Court struck down in *Williams, supra*, has no resemblance to the Arizona statutory scheme. The high barriers of the Ohio statute are not present here. The Libertarian Party in Arizona has full access to the ballot by filing a petition signed by not less than 2% of the total votes cast for governor at the last preceding general election. A.R.S. § 16–202. As we previously indicated, it was by this device that the Libertarian Party got on the 1976 ballot. We have quoted from *Jenness, supra*, as to what the United States Supreme Court recognizes as an important state interest in requiring a significant modicum of support before recognizing a political organization on the ballot as a full-fledged political party.

Since the Libertarian Party has reasonable access to the ballot, it seems ludicrous that a political organization which fields only five state candidates should be placed under the statutory mandates of A.R.S. §§ 16–231 through 16–236 covering party organization and government. The Libertarian Party's prayer for relief in its Petition for Special Action asks the court to enter an order allowing the party to designate de facto county chairmen in the several counties of Arizona. This request alone indicates the bare modicum of support as yet available for that party. Again we quote from *Jenness, supra*:

> ". . . But we can hardly suppose that a small or a new political organization could seriously urge that its interests would be advanced if it were forced by the State to establish all of the elaborate statewide, county-by-county, organizational paraphernalia required of a 'political party' as a condition for conducting a primary election. . . ." 403 U.S. at 441, 91 S.Ct. at 1975.

■ Under the election laws of the State of Arizona, as we have interpreted them, we do not find that the Libertarian Party has been invidiously treated nor has its access to the ballot been made unreasonably difficult. *American Party of Texas v. White*, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974).

Relief sought in the Petition for Special Action is denied. Order of the Superior Court granting summary judgment upheld.

STRUCKMEYER, V. C. J., and HOLO-HAN, J., concur.

CAMERON, Chief Justice, dissenting.

Just as doubt concerning the validity of signatures on a primary nomination petition should be resolved in favor of the candidate, *Blaine v. McSpadden*, 111 Ariz. 147, 526 P.2d 390 (1974), statutes limiting the rights of a new political party to a place on the ballot should be construed in favor of ballot representation. I agree with the Arkansas Supreme Court:

"The right to become a candidate for public office is, under our form of government, a fundamental right which should not be in any manner curtailed without good cause; and any law or party rule, by which this inherent right of the citizen is diminished or impaired, ought always to receive a liberal construction in favor of the citizen desiring to exercise the right." *Fisher v. Taylor*, 210 Ark. 380, 387, 196 S.W.2d 217, 220 (1946).

There are four interpretations and results that logically can be placed upon this statute (A.R.S. § 16–201):

1. "Total votes cast" means total number of votes received by all candidates running for state office at the election. In the 1976 General Election the following would be the result:[1]

| 3,088,205: | number of votes received by all candidates for state office |
|---|---|
| 154,410: | 5% of above |
| 42,903: | votes cast for Libertarian Party candidates which is only 1.39% of the number of votes received by all candidates for state office. |

I believe this interpretation, evidently adopted by the majority, imposes an unreasonably high vote requirement for access to the ballot. Under this formula, a party could actually elect its candidates to some offices (say, state legislature) and still not qualify for automatic ballot recognition at the next election. For example, 150,000 votes might elect a third of the members of the Arizona State Senate. Yet, under this reading, a party reaching such success at the polls would still not be entitled to automatic ballot recognition at the next election. I believe this is a too restrictive interpretation of the statute.

2. "Total votes cast" means total number of votes cast for all state offices in any class where the party fielded a candidate for any office in the class. For example, all votes for state senators would be included if the party ran one candidate for state senator in any district:

| 2,435,032: | votes cast for all offices of any class in which Libertarian Party ran a candidate |
|---|---|
| 121,752: | votes necessary (5%) |
| 42,903: | votes cast for Libertarian Party candidates which is only 1.76% of the number of "votes cast" under this interpretation of the statute. |

I believe this interpretation has the same defect as the first in that it is too restrictive.

3. "Total votes cast" means total number of electors who cast their votes for state offices. Under this interpretation the following figures would apply:

| 764,886: | electors who voted |
|---|---|
| 38,244: | electors necessary (5%) |
| 42,903: | votes cast for Libertarian Party candidates which is more than 5% of electors who voted. |

This interpretation is urged by the amicus curiae. It is contended that the intent of

---

1. The figures I use are those supplied by the brief of the amicus curiae, American Civil Liberties Union. There appear to be some differences among the various pleadings filed with the court, but none of the differences is significant.

the legislature, by A.R.S. § 16–201, was to determine the number of voters who actually cast their vote for the candidates of the new party and for this purpose "total votes" means "total number of voters." An elector casts "his vote" but once even though he may vote for many candidates on the one ballot and it is the number of voters supporting a particular party that determines that party's strength. Thus, if 5% of the electors cast their votes for Libertarian Party candidates (though they may also cast their votes for other parties' candidates in other races), that party has shown the necessary modicum of community support.

The problem with this interpretation is that the 42,903 votes cast for Libertarian Party candidates do not identify accurately the number of voters who were supporters of the Libertarian Party. It is safe to assume that some of the 32,100 people who voted for the Libertarian Party candidates for Corporation Commission also voted for Libertarian Party candidates for State Senator or Representative. Adding the state offices together results in an inflated figure as to the number of Libertarian Party voters or electors. Because this interpretation cannot be applied with any degree of accuracy, it must be rejected.

4. "Total votes cast" means total number of votes cast for state offices for which the party fielded a candidate. Reading the statute as requiring 5% of the total votes cast for state office in which there was a Libertarian Party candidate running, the following results are obtained:

| | | | |
|---|---|---|---|
| State Rep., Dist. 18 | Longstreth | 8260 | |
| | Turoff | 8210 | |
| | Barr | 12683 | |
| | Dunn | 12695 | |
| | Esser (Lbt) | 1882 | |
| | | 43730 | 43,730 |
| State Rep., Dist. 28 | Rigel | 15854 | |
| | Skelly | 17736 | |
| | Stevens (Lbt) | 5886 | |
| | | 39456 | 39,456 |
| State Senate, Dist. 27 | Crowley | 13319 | |
| | Mack | 18142 | |
| | Davis (Lbt) | 1770 | |
| | | 33231 | 33,231 |
| State Senate, Dist. 28 | Sheffrin | 9357 | |
| | Usdane | 16099 | |
| | Dodge (Lbt) | 1285 | |
| | | 26741 | 26,741 |
| Corporation Commission | Weeks | 328729 | |
| | DeWitt | 296931 | |
| | Jerome (Lbt) | 32100 | |
| | | 657760 | 657,760 |
| | | | 800,918 |

Votes cast for Libertarian Candidates

| | | |
|---|---|---|
| Esser | 1882 | |
| Stevens | 5886 | |
| Davis | 1770 | |
| Dodge | 1285 | |
| Jerome | 32100 | |
| | 42923 | 42,923 [2] |

42,923 = 5.4% of 800,918

2. These figures were supplied by the petitioners. The total number of votes cast for Libertarian candidates according to these figures exceeds by 20 the number supplied by the American Civil Liberties Union's amicus curiae brief relied upon, supra. This discrepancy is insignificant since either figure constitutes greater than 5% of the votes cast in these races. Furthermore, petitioners' addition of the total votes cast in State Rep.Dist. 28 appears incorrect. That error is also of no consequence to the result.

I believe that this last interpretation is the one that should be followed. It is easy to apply and not overly burdensome to attain. At the same time, it requires the "significant modicum of support" necessary for a new political party to find a place on the ballot. Assuming, as we must, that the legislature intended a result that was both constitutional and workable, it is the only result that is logical.

GORDON, Justice (dissenting):

I concur with Chief Justice Cameron's dissent.