644 P.2d 897

John KROMKO; George Johnston; and
Kathleen Franzi,
Petitioners/Appellants,

v.

The STATE of Arizona; Arizona Secretary of State; and Clerk of the Pima County Board of Supervisors, Respondents/Appellees.

No. 15752–PR.

Supreme Court of Arizona,
In Banc.

March 30, 1982.

Rehearing Denied May 11, 1982.

O'Dowd & Burke by Bruce A. Burke, Tucson, for petitioners/appellants.

Robert K. Corbin, Atty. Gen. by Anthony B. Ching, Sol. Gen., Toni S. McClory, Asst. Atty. Gen., Phoenix, for respondents/appellees.

CAMERON, Justice.

We granted review of a decision and opinion of the Arizona Court of Appeals, Division Two, which held that A.R.S. § 16–341(C) was unconstitutional to the extent that it prohibited citizens who had voted in the preceding party primary from signing a general election nominating petition for offices for which their party offered no candidate in the primary. We have jurisdiction of this appeal pursuant to A.R.S. § 12–120.-24 and Rule 23, Arizona Rules of Civil Appellate Procedure, 17A A.R.S.

We must answer the following questions on review:

1. Does A.R.S. § 16–341(C) violate the equal protection clause of the Fourteenth Amendment by disqualifying an elector who has voted in the party primary from signing a nominating petition?

2. Are petitioners entitled to recover their costs and attorneys' fees pursuant to A.R.S. § 12–348?

The facts necessary to a determination of these issues are the following. Petitioners John Kromko, George Johnston, and John Hostetter are registered as members of the Democratic Party. Petitioner Andrea Gillespie is a registered member of the Republican Party. All are registered voters in Pima County, Arizona, and qualified to vote in Arizona's primary election which was held on 9 September 1980. They wished to vote in the primary election and to sign a nominating petition for the independent presidential candidate John Anderson and candidates for other offices. Petitioner Kathleen Franzi is registered as a member of the Libertarian Party and a qualified voter in Pima County. She wished to vote for her party's candidate in the primary and to sign general election nominating petitions for other offices.

In the Republican and Democratic Party primaries, there were offices for which no candidate appeared on the ballot. The offices were listed on the ballot, but with the statement "No Candidate" where the name or names of those seeking the nomination would normally appear. As the voting instructions indicated, the voter could write in any name he wished to for that (or any other) office. The Libertarian ballot was different in that the Libertarian Party had qualified for a place on the ballot only for state and federal offices, not for county offices. See A.R.S. §§ 16–801 et seq. and *Kannarr v. Hardy*, 118 Ariz. 224, 575 P.2d 1250 (1978). The Libertarian ballot contained no list of county offices to be filled, so that a person voting in the Libertarian Party primary not only had no county candidates for whom to vote, but could not even write in the names of persons for county offices.

The usual way for a person seeking public office to qualify for a place on the primary ballot is to file nomination papers and petitions with the required number of names not less than 75 days before the primary election. A.R.S. § 16–311. After satisfying these requirements, the candidate's name will be placed on the official ballot in the party's primary, and, if nominated, will appear on the general election ballot. This is not, however, the only way a candidate's name may appear on the general election ballot. Article 5 of Title 16 provides:

"NOMINATION OTHER THAN BY PRIMARY

"A nomination petition stating the name of the office to be filled, the name and residence of the candidate and other information required by this section shall be filed with the officer with whom primary nomination papers and petitions are required to be filed within ten days after the primary election. The petition shall be signed only by voters who have not signed the nomination petitions of a candidate for the office to be voted for at the last primary election and who have not voted at the primary election." A.R.S. § 16–341(C).

Since all the petitioners herein had voted at the primary election, they were not allowed to sign petitions for "NOMINATION OTHER THAN BY PRIMARY" pursuant to A.R.S. § 16–341(C). Urging that the above provision denies them equal protection of the laws in violation of the Four-

teenth Amendment to the United States Constitution, petitioners sought a declaratory judgment that the provision was unconstitutional, an order of mandamus requiring the State of Arizona to accept all nominating petitions signed by electors who had voted in the primary, and an injunction preventing the State from enforcing A.R.S. § 16–341(C). The trial court denied all relief. Division Two of the Court of Appeals reversed, finding the statute unconstitutional to the extent that it disqualifies voters from signing petitions for offices for which their party offered no candidate, even though the offices were listed on the primary ballot with "No Candidate" listed. *Kromko v. State,* 131 Ariz. 166, 644 P.2d 902 (App.1981). The State sought review by this court and petitioners seek attorneys' fees.

CONSTITUTIONALITY OF A.R.S.<br>§ 16–341(C)

The United States Supreme Court has stated:

> "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders,* 376 U.S. 1, 17, 84 S.Ct. 526, 535, 11 L.Ed.2d 481, 492 (1964).

The preservation of the integrity of the electoral process is a legitimate state goal. *Rosario v. Rockefeller,* 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973); *Storer v. Brown,* 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974). The state, for example, may regulate elections to encourage compromise and political stability, provide the electorate with an understandable ballot, require nominating petitions to bear a minimum number of signatures, *Jenness v. Fortson,* 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971); *Kannarr v. Hardy,* supra, and require voters to register a certain number of days before the primary in order to qualify to vote. *Rosario v. Rockefeller,* supra. See also *Williams v. Rhodes,* 393

U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). The United States Supreme Court has also upheld statutory limitations on electors who vote in the primary and then sign a nomination petition for the general election. For example, in upholding the Texas Election Code which prohibited a person who had voted in the primary from signing a petition for nomination of an office that was filled in the primary election, that court stated:

> "It is true that at this juncture the pool of possible supporters is severely reduced, for anyone voting in the just-completed primary is no longer qualified to sign the petition requesting that the petitioning party and its nominees for public office be listed on the ballot. Appellants attack this restriction, but, as such, it is nothing more than a prohibition against any electors casting *more than one vote* in the process of nominating candidates *for a particular office.* Electors may vote in only one party primary; and it is not apparent to us why the new or smaller party seeking voter support should be entitled to get signatures of those who have already voted in another nominating primary and have already demonstrated their preference for other candidates *for the same office* the petitioning party seeks to fill.
>
> \* \* \* \* \* \*
>
> "[W]e see nothing invidious in disqualifying those who have voted at a party primary from signing petitions for another party seeking ballot position for its candidates *for the same office.*" *American Party of Texas v. White,* 415 U.S. 767, 785–86, 94 S.Ct. 1296, 1308–09, 39 L.Ed.2d 744, 762–63 (1974). (emphasis added)

A state may legitimately limit a voter to one nominating process. *Storer v. Brown,* supra; *American Party of Texas v. White,* supra. We believe that insofar as the Arizona statute prevents a person who has voted in the primary at which there was an opportunity to vote for a particular office, either by actually voting for a candidate listed on the ballot or by write-in for an office on the ballot but with no candi-

date listed, the statute is constitutional. The secret ballot and the opportunity to write in candidates for listed offices makes it impossible to know whether an elector voted for the candidate listed, wrote in a candidate, or abstained from voting for a particular office. The State may constitutionally prohibit an elector who has voted in the primary from signing a petition for an office which was listed on the party's primary ballot, whether or not the party offered a candidate. Signing a nominating petition after the primary has the same effect as voting for that person in the primary. To allow the voter who participated in the primary to sign a nominating petition would give a single voter two opportunities to vote in the primary for one office.

"[W]e have no doubt about the validity of disqualifying from signing an independent candidate's petition all those registered voters who voted a partisan ballot in the primary, although they did not vote for the office sought by the independent. We have considered this matter at greater length in *American Party of Texas v. White,* (citation omitted), and we merely repeat here that a State may confine each voter to one vote in one primary election, and that to maintain the integrity of the nominating process the State is warranted in limiting the voter to participating in but one of the two alternative procedures, the partisan or the non-partisan, for nominating candidates for the general election ballot." *Storer v. Brown,* supra, 415 U.S. at 740–41, 94 S.Ct. at 1284, 39 L.Ed.2d at 729.

■ As applied to the petitioners registered in the Republican and Democratic Parties, the statute is not unconstitutional. The situation is different, however, with the Libertarian Party which, for example, has not qualified on the ballot for any county or local offices. Its party members and all other voters have the right to participate effectively in the election process, *Storer v. Brown,* supra, including the nominating process. *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972). As to the county offices, the Libertarian Party supporters had no opportunity to vote for any-

one in the primary either by name or by write-in. If a person who voted in the Libertarian Party's limited primary is then prohibited from signing a nominating petition for county offices after the primary, the voter is being denied the right to vote and effectively participate in the nominating process. *Storer v. Brown,* supra. This is, we believe, a denial of equal protection and as such the statute is unconstitutional.

Therefore, we find that A.R.S. § 16–341(C) is unconstitutional only to the extent that it prevents voters whose primary ballot did not give them an opportunity to vote for a particular office from signing a candidate's nominating petition for that office after the primary.

Insofar as the opinion of the Court of Appeals would extend this determination of unconstitutionality to those instances where the office is represented on the ballot but no candidate is listed, the opinion of the Court of Appeals is disapproved.

## ATTORNEYS' FEES

■ Petitioners' second contention is that they are entitled to recover the attorneys' fees incurred in this action. Rule 21(c), Arizona Rules of Civil Appellate Procedure, 17A A.R.S., states:

"When attorneys' fees are recoverable by statute or contract, the claim for such fees in connection with the prosecution or defense of an appeal may be included in the statement of costs prescribed by Rule 21(a). The claim for attorneys' fees for the prosecution or defense of the case in superior court may also be included, provided that the superior court has not previously awarded such fees."

Petitioners base their claim for attorneys' fees on a statute which states in part:

"A. In addition to any costs which are awarded as prescribed by statute, a court shall award fees and other expenses to any party other than this state which prevails by an adjudication on the merits in any of the following:

* * * * * *

5. A special action proceeding brought by the party to challenge an action by the state against the party." A.R.S. § 12–348(A)(5).

A.R.S. § 12–348 became effective 25 July 1981. Section 3 of the Historical Note states:

"This act applies to any civil action or court proceeding pending on the effective date of this act except where a court of record has made a determination on the merits, regardless of whether final judgment has been entered, and to any civil action or court proceeding which is commenced on or after the effective date of this act."

The case at bar was a special action for declaratory judgment brought by individuals against the State, seeking to have an election statute declared unconstitutional. For the statute to apply, it would have to apply retroactively. We believe A.R.S. § 12–348 is not retroactively applicable to this case. The apparent legislative intent was to make A.R.S. § 12–348 selectively retroactive. While the legislature intended to extend the statute to some pending cases, it expressly excluded cases on which a determination had already been made by a court of record. The trial court in the instant case entered findings and denied petitioners' relief on 5 September 1980. This was a determination on the merits made by a court of record and precluded petitioners from qualifying for retroactive application of A.R.S. § 12–348. Order denying costs is affirmed.

Judgment affirmed in part and reversed in part. The opinion of the Court of Appeals, Division Two, vacated.

HOLOHAN, C. J., GORDON, V. C. J., and HAYS and FELDMAN, JJ., concur.