**WORKERS WORLD PARTY, Karl Kampovsky, Gloria La Riva, and Jonathan A. Schweitz, Plaintiffs,**

v.

**Rebecca VIGIL–GIRON, individually and as Secretary of State of New Mexico, and Hoyt Clifton, individually and as Director of Elections of the Office of Secretary of State of New Mexico, Defendants.**

Civ. No. 88–0956 JP.

United States District Court, D. New Mexico.

Aug. 24, 1988.

John W. Boyd, New Mexico Civil Liberties Foundation, Freedman, Boyd & Daniels, P.A., Roberta Price, Albuquerque, N.M., Stephen L. Pevar, American Civil Liberties Union Regional Counsel, Mountain States Region, Denver, Colo., Phil Davis, Legal Director, ACLU of N.M., Albuquerque, N.M., for plaintiffs.

John M. Paternoster, Asst. Atty. Gen., Santa Fe, N.M., for defendants.

### MEMORANDUM OPINION AND ORDER

PARKER, District Judge.

Plaintiffs filed a Motion for Preliminary Injunction, requesting that defendants be enjoined from denying the Workers World Party access to the ballot for the general election scheduled in November, 1988. The parties presented evidence at a hearing that was held on the motion on August 19, 1988, and presented oral arguments on August 22, 1988. Having considered the motion, the memoranda, testimony and exhibits submitted by the parties in conjunction therewith, and having consulted the applicable authorities, I conclude that plaintiffs' motion should be granted.

The plaintiffs in this action are: an unincorporated minority political party, one of its candidates, and two of its supporters who are registered to vote in New Mexico. They brought this action pursuant to 42 U.S.C. § 1983, contending that the New Mexico Election Code is unconstitutional on its face and as applied by the two named defendants, officials employed by the State of New Mexico. The section of the New Mexico Election Code that specifies the requirements for qualification as a political party is at issue in this case. That section, § 1–7–2(A) NMSA (1985 Repl.), provides as follows:

A. To qualify as a political party in New Mexico, each political party through its governing body shall adopt rules and regulations providing for the organization and government of that party and shall file the rules and regulations with the secretary of state. Such rules and regulations shall be adopted uniformly throughout the state by the county organizations of that party and shall be filed with the county clerks. At the same time the rules and regulations are filed with the secretary of state, the governing body of the political party shall also file with the secretary of state a petition containing the hand printed names, signatures, addresses of residence and counties of residence of at least five hundred voters of New Mexico, who declare by their signatures on such petition that they are voters of New Mexico and that they are members of the political party submitting the petition.

Plaintiffs object to the statute's requirement that the 500 signatories must declare that they are members of the political party submitting the petition. They contend that this membership requirement violates their rights to cast their votes effectively, to associate, and to express their own views, in violation of the First Amendment of the United States Constitution.

Plaintiffs also contend that subsection (C) of the same statute and its application violate plaintiffs' rights to equal protection as secured by the Fourteenth Amendment of the United States Constitution. § 1–7–2(C) NMSA (1985 Repl.) provides, in pertinent part:

C. Beginning with the general election in 1976, if two successive general elections are held without at least one candidate from the qualified political party on the ballot, the party will no longer be considered "qualified" for purposes of the Election Code [this chapter].

Plaintiffs contend that the "grandfathering" provisions of this subsection violate their rights to equal protection of the laws, because minority political parties in existence prior to 1976 are permitted to remain on the ballot without complying with the 500–signature requirement of subsection (A) as long as they place at least one candidate from that party on the ballot in every other general election, whereas plaintiffs, as a "new" minority political party, must qualify under subsection (A).[1]

Defendants contend that plaintiffs lack standing to press their constitutional arguments because even if the party membership language of § 1–7–2(A) NMSA (1985 Repl.) is overlooked, plaintiffs submitted fewer than 500 signatures that complied with the other requirements of the New Mexico Election Code. Defendants also argue that even if plaintiffs did have standing to challenge the constitutionality of the New Mexico statutory scheme, the statute is facially constitutional and has been applied in a constitutional manner.

On July 12, 1988, the Workers World Party filed its rules and regulations with the Secretary of State, and also delivered petitions containing approximately 845 signatures to defendant Hoyt Clifton, the Director of the Bureau of Elections for the New Mexico Secretary of State. The rules and regulations, as well as the petitions, were submitted in support of Workers World Party's application to qualify the Workers World Party as a political party in New Mexico under § 1–7–2 NMSA. Mr. Clifton sent the petitions to the clerks of the counties for which signatures were submitted, and asked the clerks to verify that the signatures were obtained from registered voters. He also asked the county clerks to determine the party affiliation of those voters. After receiving the responses to his inquiries, Mr. Clifton tallied the

**1.** Plaintiffs also contended that defendants' application of the statute violated their rights to due process of law as secured by the Fourteenth Amendment of the United States Constitution, because defendants had interpreted § 1–7–2 NMSA as requiring that the five hundred signatories be registered to vote as members of the Workers World Party, yet at least one New Mexico county clerk had refused to register people as members of that party. Plaintiffs did not, however, produce evidence supporting this contention at the hearing on August 19, 1988, and orally conceded that this claim was not the main thrust of their request for preliminary injunctive relief.

results and determined that only 432 signatures complied with the requirements (other than the party membership requirement) of the New Mexico Election Code. Therefore, on August 5, 1988, the New Mexico Secretary of State notified plaintiff La Riva that the Workers World Party would not be certified as a New Mexico political party and the names of the Party's presidential and vice-presidential nominees would not appear on the 1988 general election ballot. This lawsuit followed.

*I. Standing: The Numerosity Requirement*

Defendants argue that the court need not reach plaintiffs' argument that § 1–7–2 of the New Mexico Election Code is unconstitutional because plaintiffs failed to submit petitions containing signatures of 500 registered voters in support of their application to qualify as a political party in New Mexico. Despite plaintiffs' submission of 845 signatures on the petitions in support of their application, defendants contend that only 432 signatures complied with the requirements (other than the party membership requirement) of the New Mexico Election Code. At the hearing, however, plaintiffs produced evidence that defendants had improperly excluded at least 115 names from petitions involving voters from Bernalillo County alone.

Mr. Clifton testified that the petitions had been forwarded to the county clerks for inspection and that it was the policy of the Bureau of Elections to rely on the disqualification decisions made by the county clerks; his office did not normally conduct an independent review of petitions to determine whether particular signatures were properly excluded.[2] Defendants asserted, however, that signatures were properly excluded because they failed to comply with the requirements of § 1–8–30 NMSA (1987 Supp.). That statute specifies the form of nominating petitions to be used by candidates for political office in primary elections. The statute provides that "The signature of the voter shall not be counted unless the entire line indicates the voter's usual signature, his name printed as registered and his address as registered and his city or route number and is upon the form furnished by the secretary of state to the county clerks or a duplicate thereof." § 1–8–30(E) NMSA (1987 Supp.). Many of the signatures disallowed by the county clerks in this case included names that differed slightly from the printed version appearing on the Affidavits of Registration, and addresses that differed from the addresses appearing on the Affidavits of registration.[3]

Plaintiffs argue that the county clerks' disallowance of the signatures of persons whose addresses on the petitions differ from the addresses on the Affidavits violated the mandate of the New Mexico Supreme Court in *Simmons v. McDaniel,* 101 N.M. 260, 680 P.2d 977 (1984). I need

---

**2.** Testimony at the hearing also revealed, however, that the Secretary of State normally provided the county clerks only with copies of the relevant statutes; the Secretary did not provide the county clerks with specific instructions concerning the methods of counting signatures. Mr. Clifton conceded that significant disparities between numbers of signatures counted in the different counties were possible as a result of this lack of direction: one county clerk could elect to disallow all signatures that included the full middle names of the signatories, because they varied from the names on the Affidavits of registration which required only middle initials, while another county clerk could include all those signatures in his tally of allowable signatures. Since the Secretary's practice was to accept the disqualification decisions of the county clerks, notwithstanding the clerks' inconsistent standards of review, both tallies would have been accepted by the Secretary. Although

the lack of uniform results inherently possible in this system is troublesome, I need not decide the constitutionality of this practice because, as discussed below, plaintiffs have submitted enough signatures to meet the numerosity requirement of § 1–7–2(A) NMSA.

**3.** For example, page 7 of the Bernalillo County petition, line 18, contains the printed name "Judy Brown." The Affidavit of Registration lists that individual's name in print as "Judith L. Brown." The address for the individual is identical in the petition and the Affidavit and the signatures "J.L. Brown" on the petition and the Affidavit appear to be identical. Nevertheless, that person's signature was disqualified on the ground that the "Name printed as registered is different from the Affidavit of Registration." Exhibit E, at 2.

not and do not reach this argument, however, because the procedures for determining which signatures on ballot access petitions shall be counted are specified in § 1–8–*31* NMSA (1985 Repl.) rather than section 1–8–30, on which defendants rely. Section 1–8–31(B) reads:

A signature *shall be counted* on a nominating petition *unless* there is evidence presented that the person signing:

(1) is not a voter of the state, district, county or area to be represented by the office for which the person seeking the nomination is a candidate;

(2) has signed more than one petition for the same office, except as provided in Subsection A of this section, or has signed one petition more than once;

(3) is not of the same political party as the candidate named in the nominating petition as shown by the signer's affidavit of registration; or

(4) is not the person whose name appears on the nominating petition.

(emphasis added). Section 1–8–31(C) states that these procedures "shall be used to validate signatures on *any petition* required by the Election Code [this chapter]." (emphasis added).[4]

Although the title of § 1–8–31 is "Primary Election Law; Nominating Petition; Signatures to be Counted", it is obvious from the explicit language of § 1–8–31(C) that the legislature intended this section to apply to all petitions required by the Election Code, including ballot access petitions. In contrast, § 1–8–30, which contains no subparagraph similar to § 1–8–31(C) making it applicable to all petitions, is clearly limited by its language to nominating petitions for primary elections.[5]

Section 1–8–31 does not include as a reason for disqualification the failure to provide the signatory's name printed as registered or address as registered. Therefore, insofar as at least one county clerk automatically excluded signatures of registered voters whose names and addresses on the petitions varied somewhat or differed from their Affidavits of Registration, there was a failure to comply with the requirements of § 1–8–31 NMSA (1985 Repl.).

At the hearing, defendants conceded that nineteen names had been incorrectly stricken by county clerks from the petitions of registered voters submitted in support of the Workers World Party's application. When those nineteen names are added to the names of registered voters who were excluded because their names or addresses differed from their names or addresses as provided in their Affidavits of Registration, the total number of signatures of registered voters submitted in support of the Workers World Party's application exceeds 500, the number required in § 1–7–2(A) NMSA. After having compared the petitions and registration Affidavits of petitioners disqualified on the basis of name and address dissimilarity I find that the dissimilarities do not rise to the level of "evidence" that the person signing the petition "is not the person whose name appears on the nominating petition." In other words, I find that the mandatory command of the introductory clause of § 1–8–31(B) to count the signatures was not overcome by any evidence supporting the exception of

**4.** The phrase "[this chapter]" does not appear in the Session Laws. *See* Laws 1985, ch. 207, § 8. It was, therefore, added by the editors of the statute as it appears in the New Mexico Statutes Annotated.

**5.** Defendants also argue that § 1–8–64 NMSA (1985 Repl.) makes § 1–8–30 applicable to all petitions mentioned in the Election Code. Section 1–8–64 reads, in its entirety, "The secretary of state or the county clerk shall refuse to accept any petition or any signature on any such petition which does not comply with the provisions of Sections 1–8–1 through 1–8–63 NMSA 1978." This does not mean that each kind of petition described in the Election Code must comply with every provision of the Code. Instead, it means that the secretary of state shall not accept a petition which fails to comply with the particular provisions of the Code that specify the requirements for that type of petition. For example, a nominating petition for a primary election must meet the requirements of § 1–8–30 (which relates to nominating petitions for primary elections) before the secretary of state can accept it. Had the legislature intended § 1–8–30 to apply to all types of petitions described in the Election Code, it would have said so in language like that found in § 1–8–31(C).

§ 1–8–31(B)(4) NMSA. Therefore, plaintiffs have standing to challenge the only requirement of § 1–7–2(A) that they failed to meet: the requirement that the registered voters be "members of the political party submitting the petition." § 1–7–2(A) NMSA (1985 Repl.) (the "membership requirement").

## II. Constitutionality of the Membership Requirement

Plaintiffs concede that they have not fulfilled the membership requirement. Defendants do not challenge plaintiffs' assertion that the Workers World Party has complied with section 1–7–2(A)'s requirement of filing its rules and regulations with the New Mexico Secretary of State. (Deposition of Hoyt Clifton, at 48–49.) In light of defendants' concession and the resolution of the numerosity requirement in Part I, *supra*, the only question remaining is whether the membership requirement in section 1–7–2(A) is constitutional.

Plaintiffs argue that the membership requirement is unconstitutional because it violates their rights to associate, to cast their votes effectively, and to express their own views, in violation of the First Amendment. The United States Supreme Court has outlined the court's function in evaluating a constitutional challenge to a State's election law:

> It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a

position to decide whether the challenged provision is unconstitutional.

*Anderson v. Celebrezze*, 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983).

Turning first to an examination of the nature of the constitutional rights implicated in this case, it is well-established that restrictions on access to the ballot "place burdens on two different, although overlapping, kinds of rights—the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively. Both of these rights, of course, rank among our most precious freedoms." *Williams v. Rhodes*, 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968). *See also Clements v. Fashing*, 457 U.S. 957, 965, 102 S.Ct. 2836, 2844, 73 L.Ed.2d 508 (1982) (state classification schemes that impose burdens on new or small political parties may burden First Amendment interests in ensuring freedom of association) (plurality opinion); *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 184, 99 S.Ct. 983, 990, 59 L.Ed.2d 230 (1979) (the freedom to associate as a political party has diminished practical value if the party can be kept off the ballot).

■ Plaintiffs assert that the membership requirement irreparably injures their fundamental rights because it precludes voters who are unwilling to become Workers World Party members from supporting the Party's ballot access or because it forces voters to change their party affiliation as a precondition of supporting the Party's access to the ballot. Furthermore, plaintiffs point out that if the voters desiring to sign the petition for Workers World Party ballot access were registered as major party members, they would have to relinquish their rights to vote in Democratic or Republican party primaries in order to support the Workers World Party's effort to gain access to the ballot.[6] Under the

---

**6.** In *Anderson v. Mills*, 664 F.2d 600 (6th Cir. 1981), the court acknowledged "the chilling effect" of an affiliation requirement like the membership requirement at issue in this case on associational and voting rights:

> It is only those electors wishing to sign a petition who must declare their desire to vote for a specific individual. Electors who support other candidates have to make no such public declaration. The chilling effect that

*Anderson v. Celebrezze* test, therefore, plaintiffs have demonstrated that the character of the injury threatened by the membership requirement is an injury to their fundamental rights under the First and Fourteenth Amendments. They have also demonstrated that the magnitude of such injury is great. The inquiry, then, turns to the second analysis under *Anderson v. Celebrezze:* the identification and evaluation of the State's interests justifying the membership requirement.

At the hearing, defendants presented testimony by Hoyt Clifton concerning the State's interests that justified the membership requirement. Mr. Clifton stated that the State had an interest in ensuring that its ballots were not flooded by transient political parties that lacked popular support. This is consistent with the interest recognized in *People's Constitutional Party v. Evans*, 83 N.M. 303, 491 P.2d 520 (1971). In that case, the New Mexico Supreme Court recognized that New Mexico "has a legitimate interest in trying to determine some degree of good faith on the part of electors who sign nominating petitions, and in assuring at least a modicum of support for a political party and its nominees whose names are placed on the general election ballot." 83 N.M. at 307, 491 P.2d 520. Mr. Clifton also pointed out that the voting machines presently utilized by the State could accommodate only nine political parties. He conceded, however, that fewer than nine political parties had indicated the intention of fielding candidates in the forthcoming 1988 general election.

Although these State interests in regulating ballot access may be legitimate, *see American Party of Texas v. White*, 415 U.S. 767, 782 n. 14, 94 S.Ct. 1296, 1307 n. 14, 39 L.Ed.2d 744 (1974), the *Anderson v.*

*Celebrezze* analysis requires a determination of "the extent to which those interests make it necessary to burden the plaintiff[s'] rights." 460 U.S. at 789, 103 S.Ct. at 1570. Furthermore, the Court in *Anderson* emphasized the particular concerns applicable to restrictions of ballot access in general elections:

> [I]n the context of a Presidential election, state-imposed restrictions implicate a uniquely important national interest. For the President and the Vice President of the United States are the only elected officials who represent all the voters in the Nation. Moreover, the impact of the votes cast in each State is affected by the votes cast for the various candidates in other States. Thus in a Presidential election a State's enforcement of more stringent ballot access requirements, including filing deadlines, has an impact beyond its own borders. Similarly, the State has a less important interest in regulating Presidential elections than statewide or local elections, because the outcome of the former will be largely determined by voters beyond the State's boundaries.

460 U.S. at 794–95, 103 S.Ct. at 1572–73.

In this case, defendants' asserted State interests are not sufficiently compelling to warrant the requirement that all signatories to petitions in support of minority party access to the ballot be registered members of that party. The interest in a demonstration of initial popular support is served by the numerosity requirement; the addition of the membership requirement merely places an added burden on new minority parties seeking their first access to the ballot. That added burden unduly restricts the significant freedoms of associ-

---

such a practice has on associational and voting rights is obvious. The voting citizen must decide whether to sign the petition, having his political preference clearly and unmistakably disclosed, or to refrain from signing. A potential subscriber, who is uncertain about whom he will support in the general election, but with an interest in the candidate, will be unable to sign the petition because of the requisite declaration. The impact to the candidate is equally drastic. He is unable to

espouse his views because the declaration greatly curtails his ability to appear on the ballot and become widely known. The possibility of having new candidates with unusual and creative political philosophies is greatly reduced. As a result this requirement fosters a system which favors the status quo, while discouraging independent candidates and new political parties.

664 F.2d at 609.

ation and expression implicated in this case.[7]

Although the United States Supreme Court has enunciated the standards for evaluating challenges to a state's election laws, the Court has never addressed a membership requirement like the one at issue in this case. However, the Court's opinion in *Jenness v. Fortson,* 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971), sheds light on the Court's attitude toward party membership requirements. In *Jenness,* the Court rejected a challenge to a Georgia law that required a candidate for elective public office, who had not entered and won a political party's primary election, to file nominating petitions signed by at least 5% of the number of registered voters in the last general election for the office in question. Unlike New Mexico, Georgia did not have a party membership requirement in addition to its numerosity requirement. The Court upheld the Georgia statutory scheme because Georgia had imposed "no suffocating restrictions whatever upon the free circulation of nominating petitions." 403 U.S. at 438, 91 S.Ct. at 1974. Among the factors that influenced the Court were: "The signer of the petition is not required to state that he intends to vote for that candidate at the election" and "A person who has previously voted in a party primary is fully eligible to sign a petition". *Id.* at 439, 91 S.Ct. at 1974. The explicit discussion of these factors as supporting the *Jenness* Court's finding that the Georgia statute was constitutional suggests that the Court may have reached a different result if the Georgia Election Code had also required party membership or allegiance.

Although in *People's Constitutional Party v. Evans,* 83 N.M. 303, 491 P.2d 520 (1971), the New Mexico Supreme Court cited the *Jenness* case in its opinion validating an affiliation requirement in the precursor to the present Election Code, the New Mexico court did not acknowledge the importance of the *absence* of an affiliation re-

quirement to the *Jenness* Court's analysis of the Georgia statute. Indeed, the New Mexico Supreme Court did not discuss this aspect of the *Jenness* analysis at all. In *People's Constitutional Party,* however, the minority party already was a qualified political party that had apparently chosen not to hold a primary election, but attempted to place its candidates on the general election ballot without complying with the state statutory scheme applicable to qualified parties. The New Mexico Supreme Court analyzed the statutory requirements applicable to both minority and majority qualified parties and determined that the scheme was constitutional. In the present case, on the other hand, the Workers World Party has not yet succeeded in qualifying as a minority political party and has been denied even preliminary access to the ballot. Initial minority party access to the ballot is the issue presented in this case; it differs from the issue in *People's Constitutional Party.*

Several more recent cases analyzing party or candidate affiliation requirements similar to the membership requirement at issue in this case declared such requirements to be unconstitutional. In *Anderson v. Mills,* 664 F.2d 600 (6th Cir.1981), the court of appeals found unconstitutional a Kentucky statute that required signatories to a candidate's ballot access petition to provide a declaration that they desired to vote for the presidential candidate. The court stated: "Such a provision may be the most effective means to determine the support a candidate has in the community, but it also greatly, and unnecessarily, curtails associational and voting rights." 600 F.2d at 610.

Similarly, in *Libertarian Party of Nevada v. Swackhamer,* 638 F.Supp. 565 (D.Nev.1986), the court declared unconstitutional a statute that required a declaration of allegiance to a political party or its principles by signatories supporting the party's qualification as a political party for

---

**7.** The state's interest in a demonstration of continued support of parties that have qualified is satisfied by the statutory provision that a party will lose its "qualified" status if the party does not have a candidate on the ballot for two successive elections. § 1–7–2(C) NMSA (1985 Repl.).

the purpose of ballot access. The court found that defendants had not demonstrated that the requirement was either necessary or the least restrictive means to achieve the compelling state interests of protecting the integrity of the primary ballot, ensuring that the party had significant support among the electorate, or preventing intra-party raiding. 638 F.Supp. at 568–69.

Finally, in *Libertarian Party of Nebraska v. Beermann,* 598 F.Supp. 57 (D.Neb. 1984), the court declared unconstitutional a statutory requirement that persons signing a petition for new party formation change their registration to affiliate with the new party. The court stated:

> [M]any voters have no desire to change their basic political affiliations, but neither do they vote a straight political ticket in the general election. Such voters as these would be discouraged from signing the petitions for third parties by the requirement to change their political affiliation. Where enough such voters are kept from signing, all voters are diminished in their freedom of choice.

598 F.Supp. at 63. The court found the Nebraska statute's affiliation requirement too restrictive and found that the burden placed on an individual's freedom to choose privately and to express his choice privately by secret ballot was too great to survive constitutional scrutiny.

In New Mexico, the asserted state interests allegedly served by the membership requirement of § 1–7–2(A) do not justify the burdens that requirement places on plaintiffs' First Amendment rights. First, the important state interest in ensuring that new political parties demonstrate a modicum of popular support before they may be placed on the ballot is served by the numerosity requirement of petitions containing 500 signatures from registered voters. Second, the state's interest in ensuring that those 500 signatories demonstrate their commitment to the new party by becoming party members is comparatively unimportant. In any event, the fact that five hundred people decided to sign their names to a party's petition for access to the ballot

is sufficient to demonstrate significant interest in and commitment to the new party. To impose the additional requirement that those 500 signatories formally declare their membership in the party is merely to impose an unnecessary burden on those signatories' First Amendment rights.

After applying the balancing test set out in *Anderson v. Celebrezze,* I find that New Mexico's interest in ensuring popular support for political parties that appear on the ballot in the general election is not sufficiently served by the membership requirement codified in § 1–7–2(A) NMSA, in light of plaintiffs' compelling interests in their First and Fourteenth Amendment rights. Section 1–7–2(A)'s requirement that a new political party must provide petitions containing 500 signatures from registered voters who declare that they are members of that party is unconstitutional, and Workers World Party's application for qualification as a political party in New Mexico should be granted.

Plaintiffs have satisfied the requirements for granting a preliminary injunction under Fed.R.Civ.P. 65 as set forth in *Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir.1980). As discussed above, plaintiffs have demonstrated a substantial likelihood that they will prevail on the merits. Plaintiffs have also demonstrated that they will suffer irreparable injury if they are not permitted access to the November, 1988 ballot, and that the injury to them outweighs whatever minimal damage may be caused to defendants if the injunction were to be issued. Finally, plaintiffs have demonstrated that the issuance of the injunction would not be adverse to the public interest. Therefore, plaintiffs have carried their burden of showing that the four-part test for preliminary injunctive relief is satisfied in this case. Finally, defendants conceded that they would suffer no financial hardship if a decision were rendered in this case no later than August 24, 1988. For that reason, plaintiffs should not be required to post security pursuant to Fed.R. Civ.P. 65(c).

Now, Therefore,

IT IS BY THE COURT ORDERED that plaintiffs' application for a preliminary injunction is granted as follows:

(1) The party membership requirement of § 1–7–2(A) NMSA (1985 Repl.) is unconstitutional as violative of the First and Fourteenth Amendments of the United States Constitution;

(2) Defendants are preliminarily enjoined from enforcing the party membership requirement of § 1–7–2(A) NMSA and are enjoined from refusing to place the Workers World Party on the ballot for the forthcoming general election in November, 1988; and

(3) No security shall be required pursuant to Fed.R.Civ.P. 65(c).